## PARSONS vs. BOYD.

1. To maintain detinue, the plaintiff must show that he has the exclusive legal title to the chattel sued for.

2. The statute of this State which abolishes the right of survivorship between joint tenants, (Clay's Digest, 169,) applies only to those who hold the absolute property in their own right, and not to those who hold as trustees merely, or in *autre droit*.

3. If a power coupled with a trust be given to two or more, it may be executed by the survivor of them.

4. When personal property is conveyed by deed of trust to two trustees, with power to sell and pay the debts intended to be secured, the survivor of the trustees has the entire legal title to the property, and may maintain detinue for its recovery.

5. It is not essential to the probate of a deed that it should be proved to have been executed on the day of its date. It is *prima facie* sufficient, if the date of the deed and the date of the certificate of probate show that the instrument was recorded within the time required by law.

6. A recital in the certificate of probate that the grantor acknowledged the deed "to be his free act and deed," is tantamount to saying that he "signed, sealed and delivered" it.

7. When the endorsements on a deed show at what time it was left with the clerk for registration, and the book and page in which it is recorded, and these endorsements appear to have been made by the clerk, there is *a substantial compliance* with the statute, (Clay's Digest, 155, § 23,) and the endorsements may be read in evidence.

8. The admission of improper evidence against a party furnishes no ground of reversal, when no injury can by possibility result from its admission.

9. A deposition will not be suppressed because the christian name of the witness is not stated in the affidavit made to procure the issuance of the commission, when the commission and notice so describe and identify the witness as to preclude the idea that the opposite party could have been misled or injured by the omission.

10. When a deposition appears on its face to have been regularly taken, and there is nothing in the commission or notice to show that it was illegally or irregularly taken, a motion to suppress it, on the ground that the notice of the time and place of executing the commission was insufficient, is addressed to the sound discretion of the primary court, and its action cannot be reviewed on writ of error.

11. An attorney will be presumed to have read a declaration to which pleas are filed in the name of a firm of which he is a partner; and the record of the suit in which such proceedings were had, is admissible evidence in a subsequent suit against the attorney, to prove actual notice to him of the plaintiff's title, as set out in said declaration.

Error to the Circuit Court of Talladega.

Tried before the Hon. E. Pickens.

ALEX. WHITE, for plaintiff in error:

1. The deposition of "Mrs. Reese" should have been suppressed, because her christian name is not set forth in the affidavit, nor in the fiat of the judge authorizing it to be taken. The *clerk* inserted it in the commission upon his own authority. The design of the statute, in requiring the affidavit to disclose the name of the witness, is too obvious to require comment, and with equal propriety it might omit to state, "the testimony may be material" to the party. Clay's Dig. 165, § 1.

The fact that there was but *one* "Mrs. Reese" in the county, known to the witnesses who were offered to aid this defect, and the further fact that "Mrs. Reese" was well known to plaintiff and his counsel, can have no influence in settling a general rule of law, for "*the right to take testimony by deposition must be exercised in strict conformity with the statute.*" Parker v. Haggerty, 1 Ala. Rep. 633.

Again: the judge's order directs that notice of the time and place of executing the commission shall be given "by 11 o'clock, A. M. of that day," and that a commission shall issue to take her deposition "*between* the hours of 7 and 9 o'clock, A. M., on Monday next." *Neither of these commands have been complied with.* The return of the sheriff shows the notice was executed on that day in general terms, and the statute provides that "*such notice* of the time and place shall be given, as the *judge* shall think proper," Clay's Dig. 164, § 2. The commission, instead of conforming to the judge's order, which was the clerk's only power to act, to take the deposition "between the hours of 7 and 9 o'clock, A. M., of Monday next," is general in its terms, and authorizes the commissioner therein named to call the witness *at any time.* For these irregularities the deposition should have been suppressed, notice of the motion having been duly given, and the party not having had an opportunity to cross-examine the witness.

2. The deed from Bell to Boyd and Taliaferro should not have been received in evidence *as a recorded deed.* The certificate of the clerk is, that Bell acknowledged it to be "his free act and deed." This does not conform to the statute either in *form* or *substance*, see Fipps v. McGehee, 5 Por. 434; and Shelton v. Armor, 13 Ala. 652. This last is directly in

point, for the deed was offered *as a recorded deed.* In McCaskle v. Amarine, 12 Ala. 22, the court says, "the registration cannot be regarded as an official act, so as to operate a constructive notice." The certificate of acknowledgement must be, "*given under my hand and seal.*" Clay's Dig. 153, § 7.

It is by the *first* section of the act of 1818, Digest, 153, § 10, that *clerks* are authorized to take and certify acknowledgments of deeds of conveyance, "*in like manner and form* as is *now* required by law before judges."

Again: there is no certificate whatever in conformity with the statutes above referred to, showing that the deed was ever recorded or left for record. The *memoranda*, "recorded," "Jas. E. Belser, C. C. M. C." is not sufficient, and this court has in effect decided as much, Dubose v. Young, 10 Ala. Rep. 368. In that case the point was, whether the clerk could *certify* the fact that the deed had been recorded, or left for record, but the court will observe, that the certificate was in the proper form. *The improper admission* of merely cumulative evidence is sufficient to reverse a judgment, see Jones v. Falkner, 12 Ala. Rep. 165. Upon the question of an official seal, see Phillip's Ev. C. & H. Notes, Part 2, Vol. 3, 1130.

3. The writ, declaration, &c. in the case of Boyd v. Bell, was wholly incompetent as evidence against the plaintiff in error. The fact that he was one of the legal firm, whose name appeared as counsel for Bell in that suit, does not charge him with notice of Boyd's title. That would be carrying the doctrine of *constructive* notice quite too far. In fact, nothing will supply the place of *actual notice*, unless it is so declared by statute.

The proceedings and record of a cause are only evidence between *parties and privies.* The plaintiff in error claims under Pharr and Beck, and adversely to Boyd, see Davis v. Wood, 1 Wheaton, 6

4. The deed from Bell to Boyd and Taliaferro, under which Boyd makes title, should have been excluded, because by the deed which conveys land and negroes, Boyd and Taliaferro became *joint* tenants. The title which vested in them under it, possessed all the requisites of joint tenancy, viz: "unity of interest, title, time and possession," see 2 Vol. Black Com. marginal, 180.

By our statute, when two or more persons hold an estate, *real* or *personal, jointly,* and one joint tenant dies before severance, his interest shall not survive to the remaining joint tenants, but shall descend to and be vested in his heirs or legal representatives, in the same manner as if his interest had been severed and ascertained, Clay's Dig. 169, § 6. Therefore, it is insisted in this case that by the death of Taliaferro, his legal representative became a necessary party to this suit as plaintiff with Boyd; because, in actions of *detinue,* "it is well settled in this State, that to recover, the plaintiffs must have the *entire* interest in the thing sued for." Price v. Tally, adm'r, 18 Ala. 25; Miller v. Eastman, 11 Ala. Rep. 609–14; Hogan v. Bell, 1 Stew. 536; and in Knight v. Leck, 2 Dev. & Batt. 133, the personal representative was actually made a party plaintiff, and the judgment which he, in connection with the other joint owner, obtained, *was affirmed.* See also Mason v. Maury, 8 Por. 233; Boyatt v. Kerr, 7 Ala. Rep. 15, 16; see also Sugden on Powers.

But it is said, here is a power coupled with a trust, and that under such circumstances the *power survives,* therefore the estate must also. Let it be conceded the power survives, and it by no means follows that the estate does.

First, because they are separate and distinct, arising at different times and by different means. The *estate* is joint, and created by the deed, and it vested immediately on its execution. The *power* is joint also, but did not arise until the law day of the deed. The statute operates on the estate conveyed by the deed, but does not interfere with the power. And as both must have joined in this action while living, our statute is designed to secure the same unity in a suit brought after the death of one. Suppose both were dead; in that event, would it be contended that Boyd's legal representative could recover, and he only. The rule we contend for is far more just and reasonable.

5. If this position is not tenable, we then insist Boyd should have set forth, *not his title,* but the character in which he sues; *he should have sued as survivor.* Suppose one who is executor or administrator should bring an action of detinue for a slave, belonging to the estate which he represented, in his own name, without setting forth the character or right in which

he sued, could he recover? Most unquestionably he could not. The outstanding title in the estate would defeat him, and the only fact which would show that its rights are vested in him, could not be proven by him, *because he has not sued in that character.* Thus, in the case at bar, this deed vested the estate *jointly* in Boyd and Taliaferro; if, notwithstanding our statute, by the death of the latter the whole estate survived to Boyd, then, in order to show the fact, he must sue in the character of *survivor.*

WOODWARD & BELSER, *contra:*

1. The deposition of Mrs. Reese should not have been suppressed. Clay's Dig. 167, §§ 12, 17.

2. The deed of Bell to Boyd and Taliaferro, with the certificate of the clerk, and his other memoranda, were properly read in evidence, and it was *constructive* notice. Herbert v. Hanrick, 16 Ala. Rep. 597; Dubose v. Young, 10 ib. 369; Hobson v. Kissam, 8 ib. 357; Clay's Digest, 155, § 23; 18 Ala. Rep. 668.

3. But if Pharr and Beck and Parsons did not have constructive, they had *oral* notice, and that was sufficient. 12 Ala. Rep. 646; Allen v. Railroad Co. 11 ib. 438.

4. Boyd could maintain the action at law. The power conferred on him was one coupled with an interest, and it survives. 12 Ala. Rep. 673; Peters v. Beverly, 10 Peters, 533; Taylor v. Benham, 5 Howard, 233; Williams v. Otey, 8 Hump. 563; Franklin v. Osgood, 14 Johnson, 553; Burnett v. Pratt, 22 Pick. 556.

5. Where the power is a *naked* one, the court will observe *the utmost strictness* as to its execution, but where *it is connected with an interest,* they will construe *liberally,* that the interest may be protected. Taylor v. Benham, 5 Howard, 233; Peters v. Beverly, 10 Peters, 533.

6. Our statute as to non-survivorship applies to absolute estates only, and not to such an estate as Boyd claims in this case. Besides, Taliaferro's heirs have no interest in the matter. He did not pay any part of the debt. Clay's Dig. 169, § 6; Appleton v. Boyd, 7 Mass. 134.

7. Boyd in the pleading need not describe himself as survivor. Vanderheuvel v. Storrs, 3 Conn. 207.

8. If the deed from Bell to Boyd and Taliaferro is notice, then the question of notice is at an end, because all the parties are bound by it. The attempt to fix *oral* notice on Parsons below is not cumulative. *The deed is good as constructive notice, or it is not,* and the *oral* notice was proper independent of it. Allen v. Railroad Co. 11 Ala. Rep. 438.

9. There is no question raised on the record as to Watson's not having notice. The only motion was to exclude evidence *oral*, going to show notice to Parsons. The evidence was permissible. *If any question had been raised as to want of notice to Watson only, the plaintiff then might have been bound to prove it, but not otherwise.*

DARGAN, C. J.—This is an action of detinue, which was commenced by the plaintiff to recover of the defendant a slave by the name of Dick. The plaintiff, to show title to the slave, read in evidence a deed executed by B. W. Bell, by which several slaves, one of which was the slave in controversy, and a tract of land, were conveyed to the plaintiff and one Thornton Taliaferro jointly, for the purpose of securing the said plaintiff and Taliaferro against their liability as endorsers of a bill of exchange, which had been drawn by Bell, and endorsed by the grantees in the deed, Boyd and Taliaferro. This deed gave to the grantees the power to sell the property conveyed thereby, for the purpose of paying said bill of exchange, and indemnifying themselves. It further appeared that Taliaferro had died before the commencement of this suit. Upon these facts the question was made by the defendant, whether the plaintiff could bring detinue in his individual right and recover.

The law is settled, that in the action of detinue the plaintiff must show an exclusive legal title to the chattel sued for; and should it appear that he was but a tenant in common, or a joint tenant with another, and that the legal title was in both, then both must join in detinue, for one alone cannot, under such circumstances, sustain the suit. Hogan v. Bell and wife, 1 Stew. 536; Miller v. Eastman, 11 Ala. Rep. 609; Price v. Talley's adm'r, 18 Ala. Rep. 21. But we are entirely satisfied that the deed from Bell to the plaintiff and Taliaferro, connected with proof of Taliaferro's death before the

suit was brought, shows that the plaintiff has in himself the entire and exclusive legal title to the slave in controversy. Our statute, it is true, has done away with all joint tenancies, as known at the common law, and declares that when two or more persons shall hold an estate, real or personal, jointly, and one joint tenant dies before severance, his interest in the joint estate shall not survive to the remaining joint tenant or joint tenants, but shall descend to, and be vested in, his heirs or other legal representatives, in the same manner as if his interest had been severed and ascertained; Clay's Dig. 169. This act, however, only applies to such joint tenants as hold the absolute property in their own right, and not to those who hold as trustees merely, or in *autre droit*. The evil that our statute intended to remedy was, to cut off the *jus accrescendi*, or right of survivorship, which existed at the common law, and to give to the heirs at law of joint tenants the interest of their ancestors, in the same manner as if they had held as tenants in common, and not as joint tenants. It was thought unreasonable that the death of one joint tenant should give the entire estate to the survivor *for his own use*, to the exclusion of the heirs or next of kin of the deceased tenant. But when the tenants hold as trustees for particular purposes, or in *autre droit*, and can gain no advantage to themselves by the right of survivorship, then they are not within the reason of the statute, nor does the evil exist which it intended to remedy, for no profit or benefit will result to the survivor, and although he take, by the death of his co-tenant, the entire legal title, yet he will hold it as trustee, or in the right of another, and for his use and benefit. Joint trustees are not within the reason of the statute, nor the evil intended to be remedied by it, and to hold that their joint title is affected by the act, could be productive of no good; it could avoid no evil, but, on the contrary, might often lead to protracted litigation, and serious injury to the trust estate. It is a well settled principle of law, that if a power, coupled with a trust, be given to two or more, it may be executed by one who has survived the others. Hawkins v. May, 12 Ala. Rep. 673; Taylor v. Benham, 5 How, 233; Peters v. Beverly, 10 Peters, 532; Franklin v. Osgood, 14 John. 527. Boyd, therefore, had the right to execute the trust by selling the property

conveyed by the deed, and if the right to execute the trust was exclusively in Boyd, if this power survived to him notwithstanding the statute, it is clear that he must be held possessed of such title as will enable him to execute the trust; and this must be the exclusive legal title, for he alone had the power, upon the death of Taliaferro, to sell the property. We are, therefore, of the opinion that the evidence showed that the plaintiff had the entire legal title.

2. It is again insisted that the acknowledgment of the deed of trust, as appears from the clerk's certificate, was not sufficient to authorize its registration under our statutes, and consequently that the deed is void as against the defendant, who claims to be a purchaser, deriving his title from Bell, the grantor in the deed. The deed bears date on the 28th day of March, 1838, and the certificate of acknowledgment is as follows: "The State of Alabama, Montgomery County: I, James E. Belser, Clerk of the County Court of said County, do hereby certify, that on the 28th day of March, A. D. 1838, the above named Bushrod W. Bell personally appeared before me, and acknowledged the above and foregoing instrument to be his free act and deed, for the purposes therein expressed and contained. Given under my hand the day and year above written. James E. Belser, Clerk C. C. M. C."

The first objection to this certificate is, that it does not expressly allege that the grantor executed the deed on the day of its date. But this objection cannot prevail; the very same point was made in the case of Bradford v. Dawson, 2 Ala., 203; and it was there decided that the certificate of acknowledgment was sufficient. The same question again came up in the case of Hobson v. Kissam, 8 Ala., 357; and again in the case of Herbert v. Hanrick, 16 Ala., 597; and in both of these cases, it was held not to be essential to the probate of a deed, that the proof or acknowledgment contained in the certificate should show that the deed was executed on the day it purports to bear date. The statute, it is true, gives a form, and in this form thus given, it is required that the proof should show that the deed was executed on the day of its date, Clay's Dig., 153; but the same statute provides that the certificate or acknowledgment of a deed shall be good, if it contains the substance of the form thus given, whether it be in

the form or not.   We could not, therefore hold this certifi-
cate defective, without holding that it was matter of substance
that the certificate should show that the deed was actually
signed and delivered on the day of its date.   But the mere
date of a deed is not matter of substance, for it may be shown
to have been executed on a different day from the day of its
date; it takes effect from its delivery, and not from its mere
date.   Under this statute and the decisions to which we have
referred, we think it clear that the proof required, before a
deed should be admitted to record, need not show that the
instrument was executed on the day it purports to bear date.
It is *prima facie* sufficient at least, if the date of the deed and
the date of the certificate of probate show that the instrument
was recorded within the time required by law.

The next objection to the certificate is, that it does not use
the words "signed, sealed and delivered," but simply that
the grantor "acknowledged it to be his free act and deed."
This objection is also unavailing; the acknowledgment that
the instrument was the free *act and deed* of the grantor, is
tantamount to saying that he signed, sealed and delivered it.

It is further insisted that the court erred, in permitting the
endorsements on the back of the deed made by the clerk,
showing when the deed was left with him for record, and the
book in which it was recorded, to be read as evidence.   These
endorsements are as follows:  " Rec'd for registration, March
28th, 1838.  Jas. E. Belser, C. C., M. C.   Recorded in book
O., pages 708, 709, April 23rd, 1838, James E. Belser, C. C.,
M. C."   The act requires that the clerk shall give a receipt
to any one who shall leave with him a deed to be recorded,
and further requires that he shall certify on or under such
deed or conveyance the day of the month and year when he
received it, and the name or number of the book and the
page or pages in which it is recorded.   Clay's Dig. 155, § 23.
The form of the certificate required by this section of the act
is not prescribed by the statute, and we are unwilling to lay
down any particular form as indispensably requisite.   All
that this section of the act requires, in my judgment, is this,
that the endorsements on, or under the deed, should show
when the deed was left for registration, and the book and
page in which it is recorded, and these endorsements should

appear to be made by the clerk. When this is done, there is a substantial compliance with this section of the act, and nothing more is necessary to entitle these endorsements to be read as evidence, showing when ‘the deed was left for regis-tration, and the book in which it is recorded.

These reasons bring us to the conclusion that the deed was duly registered, according to the provisions of our several acts, and consequently operated as constructive notice to all subsequent purchasers who derive title from or under Bell, the grantor. Attaining this conclusion, proof of actual notice of the deed to the defendant, and those under whom he claims, was an immaterial inquiry; for whether they had such ac-tual notice or not, could in no wise affect the plaintiff's right to recover. They were charged with notice by operation of law, and it was unnecessary to prove notice otherwise. If, there-fore, it were admitted that the evidence relied on to prove notice actually given was inadmissible for this purpose, still it could not be such an error as would work a reversal of the judgment; for we have heretofore held, and upon reasoning entirely satisfactory, that when no injury can by possibility result to a party from the admission of improper evidence against him, it furnishes no ground of reversal. Herbert v. Hanrick, 16 Ala. Supra. It is true, that we must be able clearly to see that no injury could have resulted from the ad-mission of such evidence, and if we cannot clearly and be-yond doubt see this, then we must reverse, for we would not know whether injury had resulted from the errror or not.

In the case before us, it is difficult to perceive how the plaintiff's right to recover could be affected, whether Pharr & Beck, through whom the defendant claims, had actual no-tice or not, of the deed of trust through which the plaintiff derives his title, before they acquired their mortgage from Bell; and we should, therefore, be inclined to affirm the judgment, even if the deposition of Mrs. Reese, who was ex-amined to prove actual notice, ought to have been suppressed, for under the circumstances as presented by the record, the right of Boyd to recover appears to be entirely independent of the fact whether Pharr & Beck had actual notice or not.

But as the ruling of the court in refusing to suppress the deposition has been argued on both sides, and treated as an

8

important question, we propose to examine it. Two objections were made to the admission of this deposition; first, that the affidavit upon which the commission was granted does not disclose the christian name of the witness; and secondly, that the notice of the time and place of taking the deposition was insufficient. The affidavit discloses that she is a material witness, and that she resides about twenty-one miles from Talladega Court House. In the commission her christian name is given Mrs. Eliza Reese, and the notice also gives her name in full.

Now, conceding that it is necessary to make an affidavit before a commission to examine a female witness can be issued, yet we think this affidavit sufficient; it points with sufficient certainty to the witness intended to be examined, and this is all that can be necessary, especially when we see that the commission and notice so describes or identifies the witness, as to preclude the idea that the defendant could have been misled or injured by failing to insert her christian name in the affidavit. Nor is there any error in refusing to suppress the deposition, on the ground that the notice of the time and place of executing the commission was insufficient. In the case of Cullum v. Smith & Conklin, 5 Ala. 625, this court held that though the Circuit Court *might, under* peculiar circumstances, suppress a deposition which was regularly taken, yet its refusal to do so was the exercise of a discretion which could not be reviewed by writ of error. This authority is conclusive, to show that this objection cannot be sustained. There is nothing on the face of the commission, the notice or the deposition itself, to show that it was illegally or irregularly taken; nor does the evidence introduced upon the trial of the motion in the slightest degree impugn the regularity of the deposition. The question, therefore, whether it should have been suppressed or not, was exclusively one of discretion in the Circuit Court, and cannot be made the foundation of error in this court.

The only remaining question grows out of the admission of the record of a suit brought by Boyd against Bell, to recover of him the slaves conveyed by the deed of trust. It appears that the defendant was one of the attorneys of Bell in the defence of that suit, and the pleas to the decla-

ration in that case are signed by the defendant and Mr. White. The declaration, too, set forth the title of the plaintiff, and describes substantially the deed of trust by which the plaintiff derives his title to the slaves in controversy. That this record is a circumstance, tending to prove that the defendant had actual notice of the deed of trust before he purchased the slaves conveyed thereby, we cannot doubt. We cannot infer that the defendant never read the declaration, to which he as an attorney filed pleas; indeed, the legal intendment must be otherwise. It is possible that Mr. White, the defendant's partner, alone read the declaration, and filed the pleas in the name of White & Parsons as attorneys; but in the absence of proof on this subject, we must infer that the defendant read and knew the contents of the declaration; consequently, he was sufficiently apprised of the plaintiff's title before he bought the slaves, to put him on inquiry.

We can see no error in allowing the record to be read as evidence for this purpose, and consequently the judgment must be affirmed.