**LOVELACE v. MARION INSTITUTE et al.**
(2 Div. 903.)

(Supreme Court of Alabama. Nov. 18, 1926.)

1. Charities ⬤⟿43—Equity will guard charitable trusts, but will not interfere with fair, honest exercise of discretion by trustees (Code 1923, § 6479).

Equity has jurisdiction to uphold, protect, enforce, and prevent abuse of charitable trusts, but will not interfere with discretion committed to trustees and fairly and honestly exercised by them, under Code 1923, § 6479.

2. Charities ⬤⟿37—Diversion of property from charitable uses intended and change of scheme of trust is beyond power of trustees, Legislature, or court.

Neither trustees, Legislature, nor chancery court have power to divert property from charitable uses intended nor to change the scheme of the charitable trust.

3. Charities ⬤⟿37—"Cy pres doctrine" is repudiated in Alabama.

Alabama repudiates the "cy pres doctrine," which is that, in case of failure of trustee or charity intended, court will apply fund to the most closely analogous charity.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Cy Pres.]

4. Charities ⬤⟿37—Equitable doctrine of approximation allows court to vary details of administration so as to preserve charitable trust and to carry out its general purposes.

Court of chancery can vary details of administration so as to preserve charitable trust and to carry out its general purposes under doctrine of approximation.

5. Charities ⬤⟿37 — Court cannot authorize mortgage of property conveyed on charitable trust to be actually used as an educational institution contrary to express terms of trust.

Court has no power to authorize mortgaging property conveyed on charitable trust to be actually used as an educational institution as distinguished from property to provide income, contrary to express terms of trust, since doctrine of approximation proceeds on assumption that in the new circumstances the donors would agree.

Appeal from Circuit Court, Perry County; H. F. Reese, Judge.

Bill in equity by W. H. Lovelace against the Marion Institute and others to enjoin the execution and delivery of a mortgage, and cross-bill by the respondents. From a decree for respondents, complainant appeals. Reversed and remanded.

Clifton C. Johnston, of Marion, for appellant.

In dedicating land to public use, the dedicator may impose such reasonable conditions, restrictions, and limitations as he may see fit. 18 C. J. 49, 69. The gift in question constitutes a valid trust for charitable uses, and the court had jurisdiction to restrain abuse of power by the trustees. 11 C. J. 316, 357. The jurisdiction of the chancery court is not to create or alter the trust, but is confined to the mere execution thereof, to secure faithful application of the property to the use and object indicated in the deed. 11 C. J. 357; Morris v. Boyd, 110 Ark. 468, 162 S. W. 69, Ann. Cas. 1916A, 1004; Grimes v. Harmon, 35 Ind. 198, 9 Am. Rep. 690.

Rushton, Crenshaw & Rushton, of Montgomery, for appellees.

Courts of equity have jurisdiction over charities and charitable trusts, including the power of cy pres in directing trustees named in a will or deed to carry into effect the general, lawful, and charitable intent, when the particular scheme is impracticable or has become unlawful. Code 1923, § 6479; Alcazar v. Mudd & Colley, 204 Ala. 510, 86 So. 209; Chambers v. St. Louis, 29 Mo. 543; Reformed, etc., Church v. Mott, 7 Paige (N. Y.) 77, 32 Am. Dec. 613; Kain v. Gibboney, 101 U. S. 362, 25 L. Ed. 813; Rhode Island Hospital Trust Co. v. Olney, 14 R. I. 449; Hinckley's Estate, 58 Cal. 457; Crow v. Clay County, 196 Mo. 234, 95 S. W. 369. The provision in the deed does not prevent the chancery court from permitting incumbrance of the land in case of necessity. 5 R. C. L. 357; Jones v. Habersham, 107 U. S. 174, 2 S. Ct. 336, 27 L. Ed. 401; Stanley v. Colt, 5 Wall. 119, 18 L. Ed. 502; Carter v. Balfour, 19 Ala. 814; Williams v. Pearson, 38 Ala. 299; Pearce v. Pearce, 199 Ala. 491, 74 So. 955; In re Upham, 152 Wis. 275, 140 N. W. 5, 48 L. R. A. (N. S.) 1004, Ann. Cas. 1914C, 376.

SAYRE, J. By their deed of February 3, 1888, Messrs. Wilkerson and Lovelace, the last named being an ancestor of the complainant in this cause, dedicated the property formerly known as Howard College, and now as Marion Institute, to use as an educational institution—a charitable trust. The deed provided for a board of trustees to manage the property and affairs of the institute and their perpetual succession. They have since been incorporated as the deed provided they might. It was provided that—

"The said board of trustees shall not sell or incumber the said property, nor shall the same be sold or in any way incumbered, but shall forever remain dedicated to and for educational purposes and used as aforesaid."

It is shown in the original bill that the buildings on the property, consisting of a chapel and two dormitories, brick structures, and the dining hall, a frame building, were constructed prior to the war between the states, are out of repair, and, unless repaired, will soon become worthless for any purpose, and besides are so constructed that they are not at all suited for the conduct of an educational institution according to modern standards; that the trustees are maintaining a school of high grade for the education of boys, and have adopted—complainant dissenting—a resolution authorizing and directing their executive officers to borrow the sum of $50,000 to be secured by a mortgage on the property and to be used in the repair and rehabilitation of the buildings thereon without which, the bill avers, the school cannot be successfully conducted. The trustees (other than complainant) and the executive officers of the board are made parties defendant. They demurred and filed their cross-bill in which they set up the necessity for the contemplated loan and ask that they be permitted under decree of the court to borrow money for the purposes indicated and to execute a mortgage on the property for the purpose of securing the loan when made. There being no dispute concerning the facts, the court overruled the demurrer and passed a decree authorizing the loan and mortgage contemplated by the parties.

[1] The court of equity has jurisdiction over charitable trusts, to uphold, protect, and enforce them and prevent their abuse; but where a discretion has been committed to the trustees and is being fairly and honestly exercised by them, the court will not interfere. 11 C. J. 356 et seq.; Williams v. Pearson, 38 Ala. 299; Carter v. Balfour, 19 Ala. 814; Code, § 6479. That the deed of February 3, 1888, created a trust of that character is neither denied nor doubted.

[2, 3] The parties would uphold the decree authorizing the mortgage desired on the theory that such a mortgage is necessary to preserve the trust. The brief concedes, very correctly, that "ordinarily the instrument creating the trust is the law of the trust and neither the trustees nor the Legislature nor the chancery court have any power to divert the property from the uses for which the donor intended it, nor has either of them the power to change the donor's scheme of the trust, since the donor owned the property and had a right to give it under such circumstances and conditions as he saw fit"; but, the argument is, "when conditions have changed to such an extent as to make it impracticable to carry out all of the provisions of the trust instrument," the court may "authorize a departure therefrom in order to carry out the general intent of the donor." That contention would call for an application in some sort of the doctrine of cy pres, and perhaps section 6479 of the Code 1923, is cited as lending approval to the proposed application; but, since that provision of the statute law was enacted in this state, this court has on a number of occasions repudiated the cy pres doctrine, which, as the court said in Carter v. Balfour, supra, "in substance is, if you cannot find the society specified in the will, or apply the fund to the charity intended by the testator"—the court was speaking in terms of the devise creating the trust in that case—"the court will then apply it to some other charity as nearly analogous to it as possible." Carter v. Balfour, supra, and in Williams v. Pearson, the court, after citing and discussing to some extent the case of Carter v. Balfour, said:

"But, the cy pres doctrine and the prerogative power to carry out indefinite charities being excepted, the law of charities, as administered

in the English court of chancery, is substantially our law."

The above-stated conclusions have been consistently followed in this state. Johnson v. Holifield, 79 Ala. 423, 58 Am. Rep. 596; Huntsville v. Smith, 137 Ala. 382, 35 So. 120; Woodroof v. Hundley, 147 Ala. 287, 39 So. 907; State Universalist Convention v. May, 147 Ala. 455, 41 So. 515; Crim v. Williamson, 180 Ala. 179, 60 So. 293; Johns v. Birmingham Trust Co., 205 Ala. 535, 88 So. 835.

[4] The appeal in this case is not to any cy pres power of the court, but to the equitable doctrine of approximation in virtue of which the court of chancery exercises jurisdiction merely to vary the details of administration in order to preserve the trust and carry out the general purpose of the donor. In 11 C. J. 358, § 74, it is said that—

"Under the general jurisdiction of a court of chancery to administer the estate of a charity, it has power to vary the precise terms of a charitable trust when necessary. It is a natural and necessary branch of the jurisdiction over charitable trusts that the means or details prescribed for their administration should be subject to be molded so as to meet any exigency which may be disclosed by a change of circumstances, and to relieve the trust from a condition which imperils or endangers the charity itself or the funds provided for its endowment and maintenance."

We have examined the cases cited in support of the text.

The equitable doctrine of approximation is said to be in reality a principle of judicial construction resulting, not from an arbitrary power exercised in disregard of the donor's wishes, but based on a judicial finding of his intention as applied to new conditions. 11 C. J. § 76, p. 360. "The ground upon which courts of equity interfere in cases of this sort is that of effectuating the specific intent of the donor." Schmidt v. Hess, 60 Mo. 591, 594. The Supreme Court of Missouri in a carefully considered case notes a difference between lands actually used for the charity itself, e. g. (in the present case) the land described in the deed of February 3, 1888; lands set apart in order to provide a fund for the endowment of the charity by means of their use or income; and lands purchased or otherwise acquired as an investment of surplus fund, and observes that the distinction thus noted account in large measure for the varying forms in which the rule of administration has been stated in the reported cases. Lackland v. Walker, 151 Mo. 210, 251, 52 S. W. 414.

Jones v. Habersham, 107 U. S. 174, 2 S. Ct. 336, 27 L. Ed. 401, is referred to as an interesting case and is cited in this case as an authority to sustain the decree of the court below. That was the case of a trust for the use of the "Independent Presbyterian Church of the City of Savannah." The court said:

215 ALA.—18

"The condition that the trustees shall not alienate the land on which the school room stands is also a condition subsequent. * * * It will not prevent a court of chancery from permitting, in case of necessity arising from unforeseen change of circumstances, the sale of the land and the application of the proceeds to the purposes of the trust."

But, let it be noted, the land here referred to was not any part of the trust estate, nor was it involved in the litigation then in hand. Let it further be noted that the thirteenth clause of the will, by which the trust in that case was created, provided that the property the subject of the devise should not be alienated nor be taken by any levy to satisfy the debts of the beneficiary of the trust, and that, if such conditions be broken, the property should go to a designated orphan asylum. Of this disposition the court said:

"There is nothing in this clause by which the heirs at law or next of kin"—complainants in that case—"can be benefited, in any possible view. If the conditions against voluntary alienation and levy of execution are invalid, the previous devises stand good. If those conditions are valid, the devise over to the Savannah Female Orphan Asylum, an undoubted charity, will take effect."

And further, the court quoted the statute law of Georgia as sustaining the trust in that case.

Stanley v. Colt, 5 Wall. 119, 18 L. Ed. 502, is said to be a leading case on the question raised in the case presented by this record. In that case there was a devise to an ecclesiastical society, "provided, that said real estate be not ever hereafter sold or disposed of." The heirs of the donor brought ejectment as for condition broken. The court examined the whole instrument creating the trust and held that the title was unaffected by any condition. Moreover, the court based its judgment for the defendant, who had purchased from the trustees, on another "equally conclusive" ground, viz., an act of the Legislature authorizing the trustees to sell.

Ould v. Washington Hospital, 95 U. S. 303, 24 L. Ed. 450, is cited in the same connection in the footnote to page 355 of 11 C. J. Two objections were taken against the trust in that case, viz.: That the trustee was void for uncertainty; that the devise created a perpetuity. Both these questions were settled in favor of the trust. The court said, ex gratia:

"Of course, the Legislature, or a court of equity under proper circumstances, could authorize or require a sale to be made," citing Stanley v. Colt, supra.

[5] The question now presented is whether the circumstances shown by the agreement between the parties will warrant the court of equity to authorize a mortgage of the property without which, as we think it is to be

clearly inferred, the institute named by the donors of the trust could not exist. The trustees do not ask authority to execute an indefeasible conveyance. That would certainly destroy the trust in the form in which the donor intended to create it. The lot in question falls within the first category mentioned in Lackland v. Walker, supra, and repeated in 11 C. J. p. 354; that is, the lot in question is set apart for actual use by the charity itself. There appears to be a very good reason why the power of the court merely to supervise and administer the trust should be held to rest upon a basis different from its power over property set apart to provide, by means of income, for the endowment of the charity whether so devoted by the donor or acquired by the trustees subsequently for that purpose; and it would seem that, if the trustees are without power to alienate absolutely, they should be denied the power to enter into a contract which may eventuate in a loss of the property. The donors knew that buildings fall into decay, but as clearly as words could express the idea they stated their will that the property should not be alienated or incumbered. Evidently the expectation was that funds for repairs should be supplied from a different source. How then can the court, seeking to express as nearly as may be what would be the will of the donors since the buildings have been allowed to fall into decay or out of alignment with modern ideas, approximate the will of the donors by allowing an incumbrance in the teeth of the settlement—an incumbrance that may lead in a natural, if not probable, sequence to a total destruction of the trust? The doctrine of approximation proceeds on the assumption that in the new circumstances the donors would agree, but on the facts of this case, in order to grant the relief desired, the court will need to reinstate pro hac vice the heretofore repudiated doctrine of cy pres or assume an intention contrary to the language of the settlement. This we think should not be done.

"The jurisdiction of courts of equity to supervise the execution of charitable trusts does not include the power to alter the terms of the trusts." Morris v. Boyd, 110 Ark. 468, 162 S. W. 69, Ann. Cas. 1916A, 1004.

"The sound rule now is—at least in America—that courts will not execute charitable trusts in a manner different from that intended, unless the intent cannot in the original mode be literally carried out; that they will preserve the substance, although the mode may be departed from, and that they will not presume or invent an intention which the testator or donor has not fairly indicated." MacKenzie v. Jersey City Presbytery, 67 N. J. Eq. 652, 675, 61 A. 1027, 1037, 13 L. R. A. (N. S.) 227; 11 C. J. p. 361, note.

Whether it would be within the competency of the Legislature to confer upon the court the cy pres power generally, or a special power in that nature to be exercised to meet the exigency of the particular case, as was the case in some of the adjudications to which we have referred, is a question not presented for decision.

Our best judgment is that the decree should be reversed.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.