(124 So. 871)

KING et al. v. BANKS. (4 Div. 430.)

Supreme Court of Alabama. Nov. 7, 1929.

Rehearing Denied Dec. 19, 1929.

Chauncey Sparks, of Eufaula, for appellants.

W. H. Merrill, of Eufaula, for appellee.

SAYRE, J. Appellants' bill sought a decree declaring and enforcing a trust in the Cedar Tree lot in the town of Midway. As shown by the conveyance exhibited with the bill, this lot was conveyed in the year 1883 by the then owners to named "Trustees of the Midway and James Institute * * * to be used for school purposes only." The original complainants were Lamar King and two others who undertook to show their interest in the subject-matter of litigation, the Cedar Tree lot, by averring that they were resident citizens of the town of Midway each having children of school age attending the schools in said town. By their amended bill complainants have sought to show their interest as trustees of the separate school district including the town of Midway, created by the Act of the Legislature dated February 23, 1899 (Loc. Acts 1898–99, p. 1701 et seq.).

■ Considering so much of the decree as dissolved the temporary injunction—which protected the lot in controversy against changes detrimental to its dedicated use pendente lite—thereby taking into account the affidavits pro and con upon which the motion to dissolve was submitted, we think the motion was properly sustained. We have stated the controlling clause (so far as concerns the question here at issue) of the conveyance to the trustees of the Midway and James Institute. Looking to the affidavits, we are informed that the institute was a denominational Methodist school designed and operated primarily for the benefit of the children of Methodist families, though children from families of other faiths were allowed to attend. The Baptists of Midway—so for brevity to speak of Midway and James—had a like school. This last-mentioned fact, however, is noted only for its tendency to disclose the denominational mindedness of the community, if that may be of any significance. We consider that the deed to the trustees of the Methodist Institute "and their successors in office forever" must be construed as creating a trust for the education of children who might attend the Methodist Institute, not a trust for the benefit of the public schools or schools generally—in effect a trust for the Methodist Institute to be administered by the trustees of that Institute for the ultimate benefit of the children who might attend there. The evidence shows without contradiction that upon the establishment by the Legislature of the separate school district for the common benefit of all the white children of the territory therein designated the Methodist Institute was abandoned.

■ To allow the diversion of the use of the property herein litigation to the purpose proposed by complainants' bill would permit its diversion to a use not contemplated by the settlers of the trust. The possibility of a use of the property merely approximating the use intended by the grant to named trustees, i. e., trustees of a named institution, will not save the trust. The doctrine of cy pres has never been allowed by the courts of this state. At this point we quote the language of Carter v. Balfour, 19 Ala. 830: "I do not recognize the doctrine of 'cypres,' which, in substance is, if you cannot find the society specified in the will (the question there arose out of a disposition of property by will) or apply the fund to the charity intended by the testator, the court will then apply it to some other charity as nearly analogous to it as possible. The bequests should be paid only to the societies specified in the will, or their authorized agents. If the societies or either of them did not exist at the time of the testator's death, or cannot now be found, organized and known as above stated, then the bequest to such society or societies should be considered and disposed of as lapsed legacies." The law of that case has remained as then declared except as modified by section 10438 of the Code of 1923, to which we shall refer hereafter, and according to that law the trust created by the conveyance of 1883 has lapsed. In this connection it may be well to say that we consider the fact that this lot might still be available to the children of the public district school, which was established on the site of the Baptist school of Midway, as a playground or for such sanitary arrangements as are incident to the keeping of a school, such being the only uses ever made of it, to be of no consequence as affecting the question whether the trust in question has lapsed.

■■ The question presented has arisen, not out of the possible uses of the lot, but out of the fact that now for many years there has been no such thing as the Methodist Institute of Midway and James, which the evidence shows was a voluntary association, and the trustees named in the deed of 1883 have passed away. Others might, of course, be appointed by the court if there were a trust to be administered; but, on the facts heretofore

stated and the evidence in the record, the court must now assume the permanent abandonment of the trust—its lapse. There can be no appointment of trustees for the Midway Institute, for that institute has long since abandoned the function for which it was created, and for the reason indicated, i. e., that the trust has lapsed, the court has not authority to vest it in the trustees of the public school operating under and by virtue of the act of 1899.

■■ It will not be denied that, "if a trust for a particular purpose fail, by the dissolution of a corporation, or other organized body, a trust created for their particular benefit will result to the donor's heirs." 1 Perry on Trusts (7th Ed.) § 160. In 1899 the trust created by the deed of 1883 was allowed to lapse, as we have in substance already stated, and in 1906 the then sole surviving trustee of those named in the deed of 1883 executed a deed of conveyance to the heirs of the original grantors, under whom the defendants in the present suit claim title by deed, reciting the facts, to wit, that the institute no longer existed and that he (the grantor) was the sole surviving trustee of those named in the deed of 1883. This conveyance by the surviving trustee vested the full title to the property in his grantee, if the trust was then or is now lapsed, and as to that hypothesis we have stated our opinion. Parsons v. Boyd, 20 Ala. 118; 1 Perry, § 414; Code, § 10435.

■ It is suggested in appellants' brief that section 10438, new to the present Code, has had the effect of establishing in this state the cy pres doctrine. We do not think that the "change of circumstances" upon which the sale of real estate held in trust may be ordered by the equity court, as that section provides, has had the effect attributed to it by the brief. That section and the power of the court under it is predicated upon "a change of circumstances, or in the condition of such real estate since the creation of such trust," does authorize a change of the identity of the trust property, but not a change in the terms or conditions of the trust under which it is held. That is not to declare or establish the doctrine of cy pres.

The decree under review transcends the limits indicated by the note of testimony and the recital of the decree; but no question is made as to that, and we have considered the question discussed in the brief, i. e., the equity of the bill. On consideration of the pleadings and proof, the court is of opinion that appellants (complainants) have shown no equity. Accordingly, the decree is affirmed.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.