5 So.2d 777

**HEUSTESS v. HUNTINGDON COLLEGE et al.**

**3 Div. 363.**

Supreme Court of Alabama.

Jan. 22, 1942.

Thos. B. Hill, Jr. and Wm. Inge Hill, both of Montgomery, for appellant.

Ball & Ball, of Montgomery, for appellees.

FOSTER, Justice.

The parties to this cause seek a declaratory judgment of the court to determine the right and power of Huntingdon College, a corporation, which owns and conducts a college for women under the jurisdiction of the Alabama Methodist Conferences, to sell and convey two certain lots which it owns.

Those lots are situated on the west side of Bankhead Avenue in the city of Montgomery, as extended by the city from Woodley Road north through the property of Huntingdon College to Fairview Avenue. The college acquired ownership of the lots in question from two sources. The western portion of them, apparently about three-fourths of their area, was acquired by a deed to it (under the former name of the college, as incorporated), made by the Anti-Tuberculosis League, a corporation, in which there are no restrictions or limitations. So that as to that portion of the area there is no complication which restricts the right of the college to sell and convey the property. We will designate it as the "T. B." area. The eastern portion of those lots which is adjacent to Bankhead Avenue, as extended, is on the extreme western portion of a lot of fifty-eight acres of land which was acquired from John G. Thomas and wife by deed of May 13, 1907. We will designate this as the "Thomas tract." Bankhead Avenue did not extend through this property when it was acquired. The "Thomas tract" was one continuous area of fifty-eight acres between what is now Fairview Avenue on the north, Woodley Road on the south and Narrow Lane Road on the east and the "T. B." area on the west. The extension of Bankhead Avenue separated the lots in question, especially this extreme western portion of the said fifty-eight acres from the rest of it. It is on that portion of it which lies east of this avenue that all the college improvements are made, and that part of it so separated is not used or useful for educational purposes.

The deed whereby the "Thomas tract" was acquired was on the condition that "the premises shall be used, kept, maintained and disposed of as a place for the education of white women."

The purpose is to sell the lots in question to secure money to be applied on the general indebtedness of the college. The buildings, land and equipment of the college are estimated to be worth $900,000.00, all east of said Bankhead Avenue. It owes approximately $129,000, secured by mortgage on property, not including the lots here involved. The proceeds of the sale are to be applied on that debt. There is to be no restriction on the use of the property by the purchaser on account of the Thomas deed.

■ The right to sell property made in trust for charitable purposes has many angles. A difference is noted between lands to be actually used for the charity itself and those which are set apart to provide a fund for such use. This court has adopted the principle that when land is conveyed for the use of the charity itself, a sale ordinarily cannot be effected even by authority of a court of equity. Lovelace

v. Marion Institute, 215 Ala. 271, 110 So. 381. See Dallas Art League v. Weaver, 240 Ala. 432, 199 So. 831.

But if the condition of the conveyance is that it is "for the uses and benefit of" the charity so designated, there is a right to sell pursuant to the rules which apply to that situation. Street v. Pitts, 238 Ala. 531, 192 So. 258, 259.

We will assume for the purpose of this discussion that the deeds mean that the property shall be used for the named purpose, regardless of who may own it.

The doctrine of approximation, as applied to such a status, has not only been approved by our Court through a line of our cases, Lovelace v. Marion Institute, supra; Dunn v. Ellisor, 225 Ala. 15, 141 So. 700; King v. Banks, 220 Ala. 274, 124 So. 871; Noble v. First National Bank, 236 Ala. 499, 183 So. 393, but it has been enacted without substantial change into a statute, Code of 1923, section 10438, Code of 1940, Title 58, section 57, and is there thus stated: "In all cases where real estate is held by a trust created by deed, and by reason of a change of circumstances, or in the condition of such real estate since the creation of such trust, the execution thereof in exact accordance with the terms of such deed has or shall become impossible, or must necessarily fail to secure the objects manifestly intended by the grantor in said deed, the circuit court in equity in the county wherein such real estate is situated may, on the complaint of the trustee or any party beneficially interested in the trust, order the sale of said real estate, or any part thereof, and the investment of the proceeds, either in other real estate or as trust funds generally may be by law invested, for the benefit of the party beneficially interested in such trust, in such manner as said court may deem the most proper to secure the object for which said trust was originally created, as near as may be, according to the intent of the original grantor appearing in the original deed. All parties interested in said real estate, by reason of said trust, or as reversioners, shall be made parties to any action brought under this section."

Likewise to some extent is section 145, Title 47, Code of 1940, adding materially to section 6913, Code of 1923, in respect to charitable trusts, and apparently adopting the cy pres doctrine. It is as follows: "Nothing in the preceding section contained shall prevent the conveyance of real or personal property, or the issue, rents and profits thereof, to another in trust for the use of the grantor, or his family, or of a third person, or for any other lawful purpose; including specified charities, whether the beneficiaries of the charitable gift are adequately or inadequately set out in the instrument. But for a trust to be valid as a trust the legal title throughout the trust must vest in one or more trustees, with the power and duty to manage the trust property, subject to the supervision of equity; and if a trust for charity is impracticable, or too indefinite to admit enforcement, or ceases to admit of practicable enforcement, a court of equity on application of the trustee or of any person charged alone or with others with the administration of the charity may order an approximate or cy pres carrying out of the trust."

But the doctrine of equitable approximation is not dependent upon statute. It existed as an equitable principle in terms as thus enacted at the time of the Thomas deed. It had been long established in America. 5 R.C.L. 363, section 102; 10 Amer.Jur. 620, 621, section 51; 14 Corpus Juris Secundum, Charities, 511, § 50; 11 Corpus Juris 358, section 74; Restatement, Trusts, Vol. 2, section 381(d); Town of South Kingstown v. Wakefield Trust Co., 48 R.I. 27, 134 A. 815, 48 A.L.R. 1122; Stanley v. Colt, 5 Wall. 119, 18 L.Ed. 502. But that statute made clear a statement of the principle and provided a specific remedy for its application. So that it may be here applied, not considering other questions in that connection.

Our discussion of this situation is on the assumption, without deciding, that the trust deed contemplates that the property conveyed shall be used as a place for the education of white women, and that the disposition there mentioned does not authorize a change of such use.

In the Marion Institute case, supra, the question was whether this principle would allow a court of equity to authorize a mortgage on its entire plant to raise funds with which to repair the same property, thereby permitting an ultimate loss of it all, for the use to which it was dedicated, and which would wholly destroy the purpose and intent of the trustor.

Here it is only a small strip which is involved, and it has been rendered useless

by itself or in connection with the balance of the Thomas tract for "the education of white women." And as to it, the trust purpose has already failed by a change of conditions, and its sale free from the trust will not hinder the usefulness of the balance for the purpose designated, but will render to it the only aid of which it is now capable by a proper use of the proceeds.

When so, the equitable doctrine of approximation comes into operation, as described in Title 58, section 57, and Title 47, section 145, Code of 1940, by virtue of which a court of equity may decree that the trustees need not retain this small piece of property in its useless condition, but may allow its sale free of the trust so as to provide funds to be used to promote its purpose.

Section 57, Tit. 58, Code of 1940, supra, contains detailed provisions by which this existing remedy may be made available. It requires the reversioners to be made parties. But the trustors are not necessary parties when the bill shows that under their deed the property will not revert to them under any circumstances. Their deed here stipulates that "in no event is it intended that this property shall ever revert to the grantors herein." With such a feature of their deed in force, they are not necessary parties. There are no reversioners of this trust here shown to exist.

We prefer not to approve the broad terms of the decree of the circuit court in this case in respect to that portion of lots six and seven, which is a part of the "Thomas tract," nor to make definitive interpretation of the terms of the trust providing for a disposition of the property. But as to that portion of the property, the decree is so modified as to authorize a sale on the showing made, and to direct that the trustees shall invest the proceeds as provided by law for the benefit of Huntingdon College in the education of white women, and to this end may apply the same as a payment on an indebtedness of the college created for a like purpose.

As so modified, the decree is affirmed.

Modified and affirmed.

GARDNER, C. J., and BOULDIN and LIVINGSTON, JJ., concur.