202 So.2d 83

Cynthia L. ARNOLD et al.

v.

METHODIST EPISCOPAL CHURCH SOUTH OF the NORTH ALABAMA METHODIST CONFERENCE.

7 Div. 732.

Supreme Court of Alabama.

Aug. 24, 1967.

Hawkins & Rhea, Gadsden, for appellee.·

Embry & Robinson, Pell City, and Jas. M. Fullan, Jr., Birmingham, for appellants.

COLEMAN, Justice.

Complainants appeal from decree dismissing their bill of complaint after the court had sustained demurrer thereto.

Complainants aver that they are the heirs of J. S. Arnold, deceased, who had been at one time owner and in possession of a certain parcel of land; that by deed dated October 19, 1923, Arnold and his wife conveyed the land to the respondent church[1]; that respondent used the property for its church purposes for a short while, after which "they abandoned" the property and ceased to use it for church purposes, and no church or religious services have been held in the building on said land within the last twelve years; and that the building has deteriorated and is unsafe for further public use.[2]

Complainants pray that the court will cancel and set aside the deed, divest all right and title to the land out of respondent, and vest title thereto in complainants.

Respondent demurred on the grounds, among others:

1. In pertinent part, the deed recites:
   "Know All Men by these Presents: That for and in consideration of One and no/100................DOLLARS to the undersigned grantor J. S. Arnold in hand paid by The Methodist Episcopal Church South, the receipt whereof is hereby acknowledged, I the said J. S. Arnold do grant, bargain, sell, and convey unto the said Methodist Episcopal Church South the following described real estate, to-wit:
   " *    *    * (description of land) *   *   *.
   "In, Trust, that the said premises shall be used, kept, maintained, and dispursed of, as a place of divine worship for the use of the ministry and membership of the Methodist Episcopal Church, South, subject to the discipline, usage, and ministerial, appointments of said church, as from time to time authorized and declared by the general conference of said church and by the annual conference within whose bounds the said premises are situated. *S*tuated in Saint Clair, Co.
   "To Have and to Hold to the said Methodist Episcopal Church South, Their heirs and assigns forever.
   "And I do, for myself and for my heirs, executors, and administrators, covenant with said Methodist *Ep*scopal Church South, Their heirs and assigns, that I am lawfully seized in fee simple of said premises; that they are free from all incumbrances, and that I have a good right

"(1) Said bill of complaint does not contain equity.

"(23) For that no cause is shown or proper ground is presented for termination or setting aside of said deed."

The error assigned is that the court erred in sustaining the demurrer. We will consider whether the court erred in sustaining grounds (1) and (23) of the demurrer.

Appellants argue that the bill does contain equity because the averments show that complainants do have a right to the relief sought on either of two theories, to wit:

1. The deed created a trust and the purpose of the trust has failed, and, therefore, the corpus of the trust reverts to the grantor or his heirs.

2. The provision contained in the deed constituted a condition subsequent which

to sell and convey the same as aforesaid; that I will, and my heirs, executors and administrators shall, warrant and defend the same to the said Methodist Episcopal Church, South, Their heirs and assigns, forever, against the lawful claims of all persons."

2. Paragraph 5 of the bill recites:
   "5. That the Methodist Episcopal Church South used said property for its' Church purposes for a short while and after which they abandoned said property and ceased to use the same for Church purposes and disbanded as a religious society at St. Clair Springs, Alabama, and no church or religious services have been held in the building on said land within the last twelve or fourteen years; that the building has deteriorated, is crumbling and is unsafe for further public use, as the members thereof, upon information and belief of complainants united and joined other religious societies or churches and that said property has been unused and unclaimed by the Respondent for several years past and has been abandoned by it and by reason of such abandonment ceasing to use said property for church purpose, which has forfeited the title and claim to said property and Complainants under the provisions of said deed aver that the condition subsequent as shown therein has been breached and by virtue thereof they are entitled to cancel in equity the forfeiture therein recited".

has been breached, and, therefore, there has been a divestiture of the estate granted, even though the deed contains no express provision for divestiture and re-entry.

At the outset, we notice that the grant is to "said Methodist Episcopal Church South," without reciting whether the grantee is incorporated or not. We find in the bill no express averment that the grantee is or is not incorporated, but in the prayer, by appositive expression, complainants refer to the grantee in the deed as "an unincorporated religious society or church," and we must assume that the grantee is unincorporated.

An unincorporated association is without capacity to acquire and hold legal title to real property. Street v. Pitts, 238 Ala. 531, 534, 192 So. 258; Vaughn v. Pansey Friendship Primitive Baptist Church, 252 Ala. 439, 441, 41 So.2d 403. We are not to be understood as intimating anything to the contrary in this opinion. This court has said that this disability alone would prevent the association from maintaining an action of ejectment. *Vaughn* case, supra. § 143, Title 7, provides: "Actions or suits may be maintained against and in the name of any unincorporated organization or association for any cause of action for or upon which the plaintiff therein may maintain such an action against the members of such organization or association." *Vaughn* case, supra; Hamner v. Carroll's Creek Baptist Church, 255 Ala. 277, 280, 51 So.2d 164. Neither party has raised the point that respondent lacks capacity to hold the legal title. If the object of a charitable donation can be ascertained, the want of a trustee will be supplied by appointment of a court of equity. Williams v. Pearson, 38 Ala. 299, 307. See Mastin v. First National Bank of Mobile, 278 Ala. 251, 260, 177 So.2d 808. In view of these premises and the fact that the point has not been raised by the parties, we proceed to decide this appeal without regard to an unincorporated as-

sociation's lack of capacity to hold title to real property.

1.

Complainants' first theory presents the question whether the deed conveyed the land in trust or in fee simple. Since, however, we do not find determination of this question necessary for decision, we pretermit such determination which involves many intricate facets of the law of estates, deeds, and trusts. See Petty v. Boothe, 19 Ala. 633; Teal v. Pleasant Grove Local Union No. 204, etc., 200 Ala. 23, 25, 75 So. 335, 337; § 14, Title 47, Code 1940; Henry v. White, 257 Ala. 549, 60 So.2d 149; Green v. Jones, 257 Ala. 683, 60 So.2d 857; Hardee v. Hardee, 265 Ala. 669, 674, 93 So.2d 127; 18 C.J. 299, footnote 57, Deeds, § 278(1); 26 C.J.S. Deeds § 109a, p. 916, 28 Am.Jur.2d 91, footnote 1, Estates, § 15.

We will assume that the deed creates a charitable trust subject to the rules which govern such estates. See Darby v. Jones, 249 Ala. 104, 29 So.2d 879.

We have not found in the bill any averment relating to a sale of the land here involved nor any averment from which it may reasonably be inferred that such a sale is contemplated, and, therefore, we pretermit also determination whether the deed conveys "lands to be actually used for the charity itself," or lands "which are set apart to provide a fund for such use." Heustess v. Huntingdon College, 242 Ala. 272, 273, 5 So.2d 777; Lovelace v. Marion Institute, 215 Ala. 271, 110 So. 381.

What we do decide is whether the averments of the bill show that the trust, which we have assumed arguendo that the deed created, has failed so that the trust property reverts to the settlor, or his heirs, by forfeiture, reverter, or resulting trust. There is in the deed no express provision for reverter.

In 38 A.L.R. at page 44, appears an annotation on the question for decision. The

annotator summarizes the general rule as follows:

> "As a general proposition it may be stated that where a person creates a trust fund for the benefit of a particular charity or organization, and it is impossible to distinguish any general charitable intent, the fund or property will revert to the donor where it becomes impossible to carry out the purpose of the trust, even in the absence of an express provision for reverter."

Three cases indicate that this court has approved that rule. In Trustees of Cumberland University v. Caldwell, 203 Ala. 590, 84 So. 846, the question which divided the court was at what point was the failure vel non of the beneficiary of the trust to be finally determined. Both the majority and dissenting opinions indicate agreement that the trust had lapsed and that the trust property had reverted to the heirs of the donor. The majority, on rehearing, said:

> "* * * The theological department of the Cumberland University, to which the estate in remainder was devised, was as dead as Milton College, and with no better chances of resurrection. * * * After that resolution (of the trustees declaring that overthrow of the theological school had been accomplished) * * there was, not a mere possibility of reverter, but a reversion actually accomplished. * * *

> *     *     *     *     *     *

> "On that theory of the case, the legal title conferred upon the executor as trustee failed when the devise to Cumberland University lapsed, and thereupon vested in the heirs, or, in any event as to that, was thereafter held by the executor in trust for the heirs of the testator. * *" (Par. Added) (203 Ala. at page 595, 84 So. at page 851)

In King v. Banks, 220 Ala. 274, 124 So. 871, decided in 1929, a lot of land had been conveyed in 1883 to named " 'Trustees of the Midway and James Institute * * *

to be used for school purposes only.' " This court, on considering affidavits on motion to dissolve an injunction sought by trustees of a public school district created by the legislature, concluded that the deed to the trustees of the institute, a denominational Methodist school for children, "and their successors in office forever," must be construed as creating a trust for the education of children who might attend the institute, not a trust for the benefit of public schools generally, and that upon establishment of the public schools, the Methodist Institute was abandoned. This court said that the trust had lapsed and further:

> "It will not be denied that, 'if a trust for a particular purpose fail, by the dissolution of a corporation, or other organized body, a trust created for their particular benefit will result to the donor's heirs.' 1 Perry on Trust (7th Ed.) § 160. In 1899 the trust created by the deed of 1883 was allowed to lapse, as we have in substance already stated, and in 1906 the then sole surviving trustee of those named in the deed of 1883 executed a deed of conveyance to the heirs of the original grantors, under whom the defendants in the present suit claim title by deed, reciting the facts, to wit, that the institute no longer existed and that he (the grantor) was the sole surviving trustee of those named in the deed of 1883. This conveyance by the surviving trustee vested the full title to the property in his grantee, if the trust was then or is now lapsed, and as to that hypothesis we have stated our opinion. Parsons v. Boyd, 20 Ala. 112, 118; 1 Perry, § 414; Code, § 10435." (220 Ala. at page 276, 124 So. at page 873.)

In General Assembly, etc. v. Patterson, 256 Ala. 50, 53 So.2d 621, this court, in 1951, construed a deed executed in 1899, conveying a lot to certain named trustees of a school at Huntsville. The habendum was to the trustees "and their successors as such Trustees and Assigns forever." In 1943, the respondent received a deed from suc-

cessor trustees appointed by the Alabama Synod of the Cumberland Presbyterian Church, Colored. This court, without being concerned with the character of respondent's title, upheld it against the claim of the church because the church took no title by the deed, although the church was designated in the deed to appoint trustees. This court said:

"No case is presented for application of the doctrine of equitable approximation, since the evidence discloses that, although when the deed from Humphrey to the board of trustees of the Institute was made there was such a school for colored children, long ago this school had ceased to exist and the property altogether abandoned for such purpose. The intention of the grantors as clearly expressed in the deed was that the property should be used for the specific purpose designated and no other. The trust has therefore failed—lapsed—and the court cannot apply the property to a use not contemplated by the grantors under the terms of the deed. Dunn v. Ellisor, 225 Ala. 15, 141 So. 700; King v. Banks, 220 Ala. 274, 124 So. 871; Trustees of Cumberland University v. Caldwell, supra." (256 Ala. at page 53, 53 So.2d at page 623.)

In the Alabama cases last cited, and those cases from other states which we have consulted, where reverter to the settlor, or his heirs, has been allowed, there was not merely a non-user of the property for trust purposes, but the beneficiary of the trust had ceased to exist and, therefore, use of the property for trust purposes was impossible.

In Miller v. Riddle, 227 Ill. 53, 81 N.E. 48, a trust fund had been created by a will for the benefit of the Baptist Church at Old Town. The church building had become dilapidated, no services had been held for fifteen years, and the church or society had disbanded or dissolved by non-user or failure to act. After suit had been brought for construction of the will, eleven persons claiming to be members of the church met and elected trustees; but the court held such attempted reorganization insufficient to sustain the trust, and that the eleven persons assuming to constitute the church were not entitled to the trust fund.

We have not found where reverter for non-user has been allowed where the beneficiary of the trust existed at the time suit was commenced and accomplishment of the trust purpose was possible.

This court has said that when the intention of the grantor cannot be effectuated on account of changed conditions, the trust property will revert to the grantor or his heirs and that the court will not apply it to a use not contemplated by the grantor under the terms of the trust, although it may be kin to that expressed. Dunn v. Ellisor, 225 Ala. 15, 17, 141 So. 700. However, the averments of the instant bill do not show that the beneficiary for which the trust was created has been dissolved or ceased to exist.

In paragraph 5 of the bill, complainants do aver "That the Methodist Episcopal Church South * * * disbanded as a religious society at St. Clair Springs, Alabama." This, however, is not an averment that the society has been wholly dissolved. The grant is not to or for the use of a society located at or limited to St. Clair Springs. In paragraph 2 of the bill, complainants seem to say that the society has not been dissolved. In paragraph 2, complainants say that the respondent "is a religious society" and "is a part of the North Alabama Methodist Conference with its principal address, Birmingham, Alabama."[3] Those averments do not show that the beneficiary of the trust has ceased to exist. For aught that appears, the trust

---

3. Paragraph 2 of the bill recites:
"2. That the Methodist Episcopal Church South, lately of St. Clair Springs, Alabama, is a religious society or organization and is a part of the North Alabama Methodist Conference with its principal address, Birmingham, Alabama."

purpose can be carried out and divine worship can be conducted on the trust property for the use of the ministry and membership of the respondent church. We are, therefore, of opinion that complainants have not shown a right to relief under their first theory.

### 2.

In considering complainants' first theory, we assumed that the deed created a trust. We now consider complainants' second theory, and, in doing so, we assume that the deed did not create a trust, and we lay to one side consideration of anything that might be the result of the creation of a trust.

Complainants' second theory seems to be that, if the deed does not create a trust, the deed, nevertheless, does contain a condition subsequent, and, upon a breach thereof, there was a divestiture of the estate conveyed.

In support of this argument, complainants cite Hanners v. Hanners, 262 Ala. 143, 77 So.2d 484, where this court held that a provision in a deed was not a condition subsequent. The provision was that grantees were to pay grantor two hundred dollars per year as long as grantor lived. In *Hanners,* this court stated that the policy of the law is to disfavor a condition subsequent, and, when doubt arises as to whether a particular provision is a condition or a covenant, the latter will be preferred.

Complainants appear to argue that, in the instant deed, the paragraph, which immediately follows the description and begins with the words "In, Trust," creates a condition subsequent. As we understand them, none of the cases cited by complainants holds that the language of the "In, Trust" paragraph creates a condition subsequent. Certainly the deed does not contain any provision which expressly provides for forfeiture or reverter to the grantor's heirs. Under the rule disfavoring conditions subsequent, we are of opinion that the deed does not contain a condition subsequent. Under this view, complainants have not shown a right to relief under their second theory.

Since complainants did not show a right to relief under either theory, the bill was without equity and the court did not err in sustaining the demurrer.

Affirmed.

LIVINGSTON, C. J., and LAWSON and GOODWYN, JJ., concur.