55 So.2d 338

**EDMONSON et al. v. FIRST NAT. BANK OF BIRMINGHAM et al.**

**6 Div. 148.**

Supreme Court of Alabama.

Nov. 23, 1951.

450

Wilkinson & Skinner, Birmingham, for appellants.

Cabaniss & Johnston, Howze & Brown, Leader, Tenenbaum, Perrine & Swedlaw and Martin, Turner, Blakey & Bouldin and Alvin W. Vogtle, Jr., all of Birmingham, for appellees.

BROWN, Justice.

This appeal is prosecuted by the complainants from a decree of the circuit court, sitting in equity, sustaining the demurrers

of the several defendants to the substituted bill and dismissing the same.

The bill as amended is designated "Amendment to Bill of Complaint" and recites: "By leave of the Court first had and obtained the complainants in the above styled cause amend their bill of complaint, and make the same read as follows: * * *." [Italics supplied.] Said amendment was made and filed after demurrers had theretofore been filed to the original bill by the defendants and sustained by the court and complainants granted time to amend from September 9th, 1949, to January 10th, 1950.

The sufficiency of the bill as rewritten as against the demurrers filed thereto presents the only question to be here considered. Moates v. City of Andaiusia, 254 Ala. 629, 49 So.2d 294; McGowin v. McGowin, 232 Ala. 601, 169 So. 232.

The complainants are four of the beneficiaries of a trust set up by a trust indenture executed by William D. Tynes on December 31, 1931, to himself and The First National Bank of Birmingham, as Trustees, for the use and benefit of himself, his wife, children and grandchildren, a copy of which was attached to the bill and made a part thereof. By said trust indenture William D. Tynes conveyed to said Trustees, "80 shares Eighth Avenue (Land Company) common stock and 1030 shares Hardie-Tynes Manufacturing Company common stock", "To have and to hold the same unto the said William D. Tynes and The First National Bank of Birmingham, and their successors in trust but in trust nevertheless for the uses and purposes, upon the terms and conditions and with the powers and duties hereinafter stated."

The following are the defendants: Hardie-Tynes Manufacturing Co., a corporation, The First National Bank of Birmingham, the surviving trustee (William D. Tynes died August 19th, 1933), R. C. Stobert, a member of the board of directors and one of the managing officers of the corporation; Mrs. Mary Poliard Tynes, the widow of the grantor, one of the beneficiaries; Mrs. Hazel Tynes Stobert and W. Fisher Tynes, children of the grantor, the last named being a member of the Board of Directors of said corporation and the other managing officer of the corporation. W. Fisher Tynes died November 26, 1948 and the suit was revived against his executors.

The bill alleges that of the total outstanding 1060 shares of stock of Hardie-Tynes Mfg. Co., the trust estate of which the bank is trustee, owns 988 shares, R. C. Stobert 99, W. Fisher Tynes 72 and Luther Strange 1.

The bill further alleges: "The said Luther Strange holds the legal title to one share of said stock in order to qualify him as a director of the Hardie-Tynes Manufacturing Company, but said share of stock in truth and in fact is the property of the Trust Estate and is held by said Strange for its account. He exercises no independent judgment as a director but follows the direction and instruction of said Stobert, said Tynes and said Bank.

"(8) From 1934 to 1942 the Board of Directors of the Hardie-Tynes Manufacturing Company was composed of R. C. Stobert, W. Fisher Tynes and W. S. Shields who was a long time employee of the Company and who held the legal title to one share of stock in said corporation for the account of the Trust Estate and who exercised no independent judgment but followed the direction and instruction of said Stobert and said Tynes and said Bank, and Charles Zukoski who was Vice-President and Trust Officer of said Bank. Said Shields was succeeded by said Luther Strange in the fall of 1943 or the spring of 1944 as a director of the Hardie-Tynes Manufacturing Company and about July 23, 1942, said Zukoski resigned from said Board of Directors. His resignation was accepted and from 1943 to date the Board had been composed of said Stobert, said Tynes and said Luther Strange. The Bank as Trustee of a majority of the voting stock in the Hardie-Tynes Manufacturing Company voted for the election of R. C. Stobert and W. Fisher Tynes as directors of the Hardie-Tynes Manufacturing Company in the year 1934, and in each year thereafter."

The bill further alleges: "(10) Prior to and from 1934 to date the Bank has been

452

engaged in the banking business in Birmingham, Alabama. During said time it loaned Hardie-Tynes Mfg. Co. large sums of money from time to time. It was also the depository of Hardie-Tynes Mfg. Company and up until the fall of 1941 Hardie-Tynes Mfg. Company's sole banking connection in Birmingham, Alabama. In the fall of 1941 or early in 1942 the said Tynes and the said Stobert negotiated with the Bank as Trustee for compensation for the year 1941 which was subsequently fixed or approved by the Bank for the year 1941 at $167,037.00 for them. The said Tynes and the said Stobert were paid said sum of $167,037 for services alleged to have been rendered the Hardie-Tynes Company for the year 1941, and said sum included a straight salary of $40,000 and an alleged bonus of $127,037. About the time negotiations got under way, between the said Tynes and Stobert and said Bank for their compensation for the year 1941, the said Tynes and the said Stobert, caused the Hardie-Tynes Mfg. Company to deposit a substantial sum of money in the Birmingham Trust and Savings Company, a banking institution in Birmingham, Alabama, in competition with said First National Bank of Birmingham. About the time said negotiations got under way, or about the time they were concluded, an officer of the Birmingham Trust and Savings Company proposed said Tynes and Stobert for membership in the Mountain Brook Country Club, which they greatly desired. This was done to cultivate good relations between the Birmingham Trust and Savings Company and the said Tynes and the said Stobert, and to influence them to divide the commercial account of the Hardie-Tynes Company with said Birmingham Trust and Savings Company.

"(11) The said Stober and the said Tynes undertook, by causing the Hardie-Tynes Mfg. Company to make the aforesaid deposit in the Birmingham Trust and Savings Company, to create the impression on the First National Bank of Birmingham, they were about to cause the Hardie-Tynes Mfg. Company to divide its commercial account with the Birmingham Trust and Savings Company in a substantial way, or that it was going to remove its commercial account, which was a large and profitable account, to that banking institution. The First National Bank of Birmingham was advised or learned that said deposit had been made. Following the making of said deposit and the proposal of the said Tynes and Stobert for membership in said Club as above set forth the total compensation of the said Tynes and the said Stobert for the year 1941 was fixed by the bank or approved by the Bank at $167,037.00.

"(12) Complainants aver that in fixing the total compensation of the said Tynes and the said Stobert for the year 1941, at said figure, the said Bank was influenced by its desire to retain the commercial account of the Hardie-Tynes Mfg. Company, and that in fixing their compensation for said year at said figure, said Bank endeavored to offset the attention that the Birmingham Trust and Savings Company was paying to said Tynes and said Stobert at said time in an effort to obtain the commercial account, or a part thereof, of the said Hardie-Tynes Mfg. Co.

"(13) Complainants are informed and believe, and on such information and belief charge and state, that the said sum of $167,037.00 fixed or approved by said Bank as compensation for the said Tynes and the said Stobert for the year 1941, was grossly excessive and unreasonable, and constituted a waste of the funds of the said Hardie-Tynes Mfg. Company, in that the said Bank and the said Tynes and the said Stobert knew, or by the exercise of reasonable diligence, could have ascertained, that the sum so fixed was greatly in excess of the true value of the services rendered, and was greatly in excess of the amount paid by other corporations in the Birmingham District for similar services rendered, and greatly in excess of amounts paid by other corporations in the Birmingham District for the rendition of similar services in connection with the handling of a like volume of business transacted during that year.

"(14) In 1942, the complainants claimed that said sum paid said Tynes and said Stobert, was excessive; they employed counsel and made preparations for instituting a suit against said Tynes and said Stobert and said Bank, on behalf of the said

Hardie-Tynes Mfg. Company to require them to restore to the corporate treasury, approximately $85,000 of the said $167,037.00 which they received for services in the year 1941. After some negotiations, the said Stobert and the said Tynes and the said Bank agreed that said Tynes and said Stobert should restore said $85,000.00 to the treasury of said corporation, and, they did by executing and delivering their notes for that amount payable in 1942 and 1943, which they paid.

"(15) In 1943 the Bank as trustee, approved a bonus to said Tynes and said Stobert in the sum of, towit: $80,840, which was within $5000.00 of the amount they restored to the treasury of said Hardie-Tynes Mfg. Company in 1942 and 1943. The $80,840, bonus paid to the said Stobert and the said Tynes for the year 1943 was grossly excessive and unreasonable and constituted a waste of the funds of the said Hardie-Tynes Mfg. Company, in that the said Bank and the said Tynes and the said Stobert, knew, or by the exercise of reasonable diligence, could have ascertained, that the sum so fixed was greatly in excess of the true value of the services rendered, and was greatly in excess of the amount paid by other corporations in the Birmingham District for similar services rendered, and greatly in excess of amounts paid by other corporations in the Birmingham District for the rendition of similar services in connection with the handling of a like volume of business transacted during that year.

"(16) At various times between 1934 and 1941 the Bank loaned W. Fisher Tynes, and R. C. Stobert large sums of money, knowing that their principal means of repaying said loan was the compensation said Tynes and said Stobert would receive from Hardie-Tynes Mfg. Company. Complainants aver that the compensation paid said Stobert and said Tynes in each of the years 1941 to 1946, inclusive, as above set forth, was illegal and constituted waste of the assets of Hardie-Tynes Mfg. Company and a waste of the assets of the trust estate in that the only authority for the payment of said compensation was a resolution of the Board of Directors of said Hardie-Tynes Mfg. Company adopted by vote of the said Stobert and the said Tynes as directors of Hardie-Tynes Mfg. Company purporting to authorize the payment of said compensation, which purported authority, complainants charge, was null and void because said Stobert and Tynes as directors of the Hardie-Tynes Mfg. Company were disqualified from fixing their compensation.

"(17) Complainants aver that the Bank as Trustee was disqualified to authorize or approve the payment of said amounts, because it had an interest adverse to the trust in authorizing or approving said compensation in that one purpose in fixing said compensation was to place said Stobert and said Tynes in funds with which they might repay loans made by the Bank to them, and another purpose was to retain the good will of the said Stobert and the said Tynes and the commercial account of the Hardie-Tynes Mfg. Company.

"(18) Complainants aver that the facts showing that said compensation paid to said Tynes and said Stobert in each of the years following the year 1941 was grossly excessive was in the peculiar knowledge of said Stobert and said Tynes and said Bank at the time said payments were made, and instead of communicating said facts to complainants said Tynes, said Stobert and said Bank as Trustee represented to complainants that said sums were fair and reasonable.

"(19) Complainants aver that since 1934 the said Hardie-Tynes Mfg. Company has been operated by the said Stobert and said Tynes under the direction and with the approval of said Bank, and over the protest of complainants, mainly in the interest of said Stobert and said Tynes and said Bank as shown by the following:

"From 1934 to 1946, inclusive, Hardie-Tynes Mfg. Company has paid $993,671.00 to said Stobert and said Tynes in salary and bonus, and during the same period of time it has paid its stockholders only $562,306 in dividends. Complainants aver that said Stobert and said Tynes were heavily indebted to said Bank during the years 1941 to 1946, inclusive, and that had they not been so indebted the compensation paid to them by Hardie-Tynes Mfg. Com-

454

pany during said time, with the approval of the Bank as Trustee, would have been materially less than the sums they received.

"(20) Complainants aver that prior to February 1942 the Bank as trustee did not disclose to them any facts with respect to the amount of compensation it approved for said Stobert and said Tynes. In February, 1942, complainants took up with said Bank, as trustee, the matter of the compensation payable to Stobert and Tynes for the year 1942 and on ascertaining the amount paid to them in 1941 and vigorously protested the sum paid to them for the year 1941. Their base pay for 1942 was fixed at $32,000.00 over complainant's protest as being excessive although it was $8,000.00 less than the previous year.

"(20-a) About the 20th day of March, 1941, Admiral Emory S. Land of the United States Maritime Commission called W. Fisher Tynes and insisted that it was the duty of Hardie-Tynes Mfg. Company to arrange to build some marine engines for the Maritime Commission. Hardie-Tynes Mfg. Company had built similar engines during World War I at a price under $100,-000 each. Hardie-Tynes Mfg. Company had previously quoted Gibbs & Cox, Marine Architects of New York, who were purchasing a number of said engines for said Maritime Commission, a price of $128,000 each for six engines and $123,000 each for additional engines. Gibbs & Cox advised that they had bought about 60 of the engines at $95,000 to $97,000 each and that the maximum figure they would consider would be around $100,000. Hardie-Tynes Mfg. Company declined to manufacture the engines at that price. Whereupon Admiral Land insisted that Hardie-Tynes Mfg. Company should build said engines for the Maritime Commission. At that time Hardie-Tynes Mfg. Company was doing a large amount of profitable work for the Navy and said W. Fisher Tynes was of the opinon that if it refused to build said engines for the Maritime Commission the refusal would be held against it. At said time the Bank was financing work under way by Hardie-Tynes Mfg. Company and was making it large loans from time to time. There was in Birmingham, Alabama, at said time a concern known as Birmingham-Goslin Mfg. Company, of which Mr. George M. Morrow, Jr., was President. This concern was a competitor of the Hardie-Tynes Company. Said concern was heavily indebted to the Bank at said time and in truth and in fact was being largely operated by the Bank in an effort to enable it to earn sufficient money to pay its indebtedness to the Bank. The Bank, W. Fisher Tynes and R. C. Stobert and George M. Morrow, Jr., worked out a plan whereby R. C. Stobert, W. Fisher Tynes and George M. Morrow, Jr., three incorporators, would incorporate a company to be known as Alabama Marine Engine Company with an authorized capital stock of $6,000.00 Said company was incorporated on the 25th day of March, 1941, by said parties with an authorized capital of $6,-000.00 paid in at the time and 60 shares of common stock of the par value of $100.00 each were authorized, and R. C. Stobert, W. Fisher Tynes and George M. Morrow, Jr., were each issued 20 shares of said stock. Said Stobert, Tynes and Morrow were the three incorporators, the officers and directors of said corporation. At a meeting of the directors of said corporation on January 26, 1942, the authorized capital stock was increased to 300 shares of common stock with par value of $100.00 per share. This additional stock was immediately subscribed for and issued to the original incorporators, 80 shares each. Said Morrow did not have the funds available with which to pay for the stock issued to him and it was necessary that he borrow same from Birmingham-Goslin Mfg. Company, which in turn would have to borrow the money from the Bank. The Bank made a loan to Birmingham-Goslin Mfg. Company necessary to pay for the stock subscribed for by said Morrow and the Bank either had Birmingham-Goslin Mfg. Company to take over said Morrow's stock in the Alabama Marine Engine Company or said stock was taken over by the Bank.

"(21) Although Hardie-Tynes Mfg. Company endeavored to obtain orders for said engines from Gibbs & Cox, Marine Architects of New York, and quoted them a price of $128,000 each for six engines and

$123,000 each for additional engines, Hardie-Tynes Mfg. Company, speaking through W. Fisher Tynes, informed Admiral Land of the United States Maritime Commission, that Hardie-Tynes Mfg. Company would be unable to accept a contract that would make them responsible for the production of the complete engine in their own plant. Said Tynes then suggested to Admiral Land the formation of a corporation to be organized with R. C. Stobert, George M. Morrow, Jr., and W. Fisher Tynes as stockholders and officers, with a small paid in capital, which would accept a contract for the complete engine and sublet contracts for certain of the larger parts of the engines, and the erection thereof, to Hardie-Tynes Mfg. Company and Birmingham-Goslin Mfg. Company, the remaining work, consisting mostly of small machine work for which Hardie-Tynes and Birmingham-Goslin did not have available capacity, to be let to smaller shops over the Country. In this interview and correspondence with Admiral Land, Hardie-Tynes Mfg. Company, acting through its President W. Fisher Tynes, stated:

" 'It is obvious that the operation of the new corporation would require considerable over-time work of its officials and that permission and agreement to the plan would have to be obtained from the respective directors of the two companies involved. While the plan has not as yet been discussed with them, it is believed that approval could be obtained on the grounds that they would benefit by reason of the work subcontracted to them.'

"Complainants aver that as a matter of fact said Tynes and the Bank and said R. C. Stobert and said George *W.* Morrow, Jr., had discussed the plan fully and in detail at the time it was submitted to Admiral Land on March 20, 1941.

"(22) Following the incorporation of the Alabama Marine Engine Company on March 25, 1941, said Tynes and said Stobert, with the approval of said Bank, caused Hardie-Tynes Mfg. Company to purchase, on its credit, material and supplies to the extent of $119,566.50 to be used in assembling the marine engines and the Alabama Marine Engine Company had contracted to build for the Maritime Commission, at a contract price of, towit: $108,000 each. On February 5, 1942, the Alabama Marine Engine Company borrowed $300,000 from the First National Bank of Birmingham for the term of one year, and executed and delivered a note in that amount to the Bank due February 5, 1943. On the same day the Alabama Marine Engine Company executed and delivered to Hardie-Tynes Mfg. Company a note due February 5, 1943, in the amount of $119,566.50 covering the price of materials purchased by Hardie-Tynes Mfg. Company to be used in assembling of said marine engines. By arrangement with the Bank the Hardie-Tynes Mfg. Company acting through said Stobert and said Tynes subordinated the payment of the note given by the Alabama Marine Engine Company to Hardie-Tynes Mfg. Company in the amount of $119,566.50 to the note given by the Alabama Marine Engine Company to the Bank in the sum of $300,000.

"(23) About the 4th of April, 1942, F. Hopkinson Smith & Company, Certified Public Accountants in Birmingham, Alabama, made a report on an examination of accounts of the Alabama Marine Engine Company for the fiscal year ended March 31, 1942, in which attention was called to the facts averred in the preceding paragraph, and upon learning about those matters these complainants employed and paid counsel a fee of, towit: $5,000.00 to save Hardie-Tynes Mfg. Company from any loss in connection with its transaction with the Alabama Marine Engine Company, and to recover for the Hardie-Tynes Mfg. Company approximately $85,000, of the sum paid to Tynes and Stobert in 1941, and to have the compensation of said Stobert and said Tynes for the year 1942 fixed at a reasonable figure. After several months of discussion and negotiations and the announcement of an intention on the part of the complainants to place the matter in Court if it was not otherwise adjusted, a settlement was reached in the case which was embodied in the minutes of a special meeting of the Board of Directors of the Hardie-Tynes Mfg. Company held on September 10, 1942, and approved by said Com-

pany, the beneficiaries under the Trust of William D. Tynes, deceased, dated December 31, 1931, the stockholders of Hardie-Tynes Mfg. Company and the Bank, a true copy of which is attached to the original bill and marked Exhibit 'B' and here adopted and made a part hereof as if fully set out herein. In said settlement, among other things, it was provided:

"1. Stobert and Tynes, jointly and severally, guaranteed the performance by the Engine Company of its contract with Hardie-Tynes.

"2. They guaranteed that Hardie-Tynes Mfg. Company would not sustain any loss by reason of any contract which had been or may be entered into by Hardie-Tynes Mfg. Company and the Engine Company while they had any interest in the latter.

"3. Stobert and Tynes agreed that no dividends should be paid by the Engine Company and that all funds of the Engine Company not disbursed in the payment of its proper costs of operation, of performing its contract and liability to persons other than Stobert and Tynes should be impounded until the full amount due or to become due by the Engine Company to Hardie-Tynes Mfg. Company has been paid.

"4. Said Stobert and Tynes were to refund to the Hardie-Tynes Mfg. Company $42,518.50 each as overpayment on their salaries and compensation for the year 1941, said sums payable as follows: $9,-518.50 each to be paid in cash within ten days from date of the settlement and notes for $16,500.00 each payable on or before December 31, 1942, and notes for $16,500.00 payable on or before December 31, 1943, secured by depositing with the Trustees 50 shares each, separately and not jointly, duly endorsed, stock in Hardie-Tynes Mfg. Company as collateral.

"5. The salaries and compensation to be paid or credited to Stobert and Tynes for 1942 $16,000 each without incentive (percentage of earnings) or other compensation for that year and without prejudice or commitment as to such base or as to incentive compensation as to the subsequent years. This had the effect of making the total compensation payable for the year 1941 to Stobert and Tynes, towit: $41,000 each and the total compensation for the year 1942 $16,000 each—they to retain whatever profit and compensation was payable to them from the Alabama Marine Engine Company.

"6. The Bank terminated the subordination agreement executed by Hardie-Tynes Mfg. Company by which it agreed to subordinate the obligation due it by the Engine Company in favor of loans made or to be made by the Bank, and acknowledged that there was no obligation on the part of Hardie-Tynes Mfg. Company for any obligation of the Engine Company.

"Some time after said settlement was consummated the Bank, without advising with the complainants, extended the time for the payment of notes of W. Fisher Tynes and R. C. Stobert given as evidence of the amount they were to restore to the Treasury of Hardie-Tynes Mfg. Company.

"(24) Complainants aver that the services of their counsel were reasonably worth $5,000.00 and that it resulted in a recovery by the Hardie-Tynes Mfg. Company of, towit: $85,000 from said Stobert and said Tynes which inured to the benefit of all the stockholders of said Company, beside the other advantages obtained in said settlement set forth in Exhibit 'E' hereto attached and that a suit would have been instituted for the recovery of same had not the controversy been settled as aforesaid. That they had made demand on Hardie-Tynes Mfg. Company for the payment of the fee paid their counsel and for reimbursement of said payment, and that the same has been refused; and they are informed and believe and on such information and belief charge and state that said Stobert and said Tynes and said Hazel Stobert who is the wife of the said R. C. Stobert, refuse to consent to the payment of the same because complainants insisted that said Tynes and said Stobert restore to the Treasury of the corporation the amounts they agreed to restore on the date the same were payable.

"(25) In 1934 and in each year thereafter, up to and including the year 1947, the said Bank as Trustee voted the trust stock for the election of directors of said

corporation and in each of said years it has voted the said stock for the said W. Fisher Tynes and R. C. Stobert as directors, well knowing that in 1942 and each year thereafter that the said Tynes and the said Stobert, as such directors, had, without authority of law, voted themselves large and excessive salaries and bonuses. Complainants aver that said Bank, as Trustee, disregarded its fiduciary duty when it enabled the said Stobert and the said Tynes to dominate and control said corporation and to annually vote themselves excessive salaries or excessive bonuses, during each of the years subsequent to 1937. The nature, the amount and extent of said salaries and said bonuses are shown in detail in the statement incorporated in paragraph (5) of the bill as amended.

"(26) On, towit: the 20th of December, 1937, the Bank, as trustee, caused to be written and presented to complainants, or if it did not cause to be written and presented to complainants it had knowledge that someone else had written and proposed to present to complainants, beneficiaries of said trust, a document of which the following is a copy:

" 'The First National Bank of Birmingham Birmingham, Alabama.

Gentlemen:

"For future reference and in order that consideration in regard to officer's compensation and common stock dividends of Hardie-Tynes Mfg. Company may be put on a more definite basis than has existed since the death of W. D. Tynes, we, the undersigned adult beneficiaries under the Indenture of Trust executed by W. D. Tynes dated December 31, 1931, do hereby approve and subscribe to the following general statement of policy:

" '1. The yearly salaries of W. F. Tynes and R. C. Stobert, for their services in the management of Hardie-Tynes Mfg. Company, shall, as heretofore, be fixed by the Board of Directors, with the approval and consent of the Trustees.

" 'In fixing said salaries full consideration shall be given by the Trustee to (a) the responsibility that is involved, (b) a comparison with salaries of officials of equal worth and ability employed by other concerns. (c) the present and prospective earning power of the company at that period.

" '2. In addition to a fixed salary, it is provided in Section 1, paragraph "E" of the above mentioned Indenture of Trust, that W. F. Tynes and R. C. Stobert shall receive, as additional compensation, after deduction for taxes and depreciation five (5) per cent of the net profits of the Company for any one year. It is further provided in this section that in the sound discretion of the Trustee that the above compensations may be increased.

" 'An examination of the company records indicates that during the life of W. D. Tynes, there existed a well established custom, during prosperous years, of declaring substantial increases in salaries or bonuses to the responsible officials of the Company, in proportion to the earnings of the Company for those years. It is hereby agreed by the undersigned that this custom, as a matter of policy, is fair and equitable, and that such a policy shall again be placed in effect.

" 'It is believed that in the interest of all concerned, such increases in compensation to the above named officials, should be fixed with adequate regard for the dividends paid on the outstanding common stock, and to this end the following procedure is herewith approved.

" '(a) Determine net profits, after deductions for taxes and depreciation in the usual manner, for each year beginning with the year 1937.

" '(B) Deduct and pay to W. F. Tynes and R. C. Stobert each, five (5%) percent of the said net profits as provided in Section 1, paragraph "E" of the Indenture of Trust.

" '(c) From the profit remaining, deduct and make available for distribution a minimum dividend on the outstanding common stock of $11,600 (this equals $10.00 per share on the 1160 shares outstanding).

" '(d) From the amount remaining from above deduct and pay to W. F. Tynes and R. C. Stobert an additional bonus of five

458

(5%) percent each, as additional compensation.

" '(e) From the amount remaining from above the Directors of the company and the Trustee shall in their sound discretion determine or deduct the amount that is to be retained by the company for use as operating capital, capital investment and similar purposes.

" '(f) The amount remaining from above shall be available for distribution as extra dividends to be paid on the common stock outstanding, and is in addition to the minimum dividend set forth in (c) above.

" '3. Due to the effect of existing or new Revenue Laws that may be passed in the future, and in order that to some extent the heavy taxes on retained profits may be avoided, the Directors and Trustee may in their discretion declare a dividend on the outstanding common stock as in (c) and (f) above, but distribution of the Trustee's share of said dividends may be paid all or in part to the beneficiaries under the trust with the understanding and agreement that all or a portion of such payments, less a proper deduction for individual income taxes, shall be returned or recontributed to the company, in such manner as may be determine by the Directors and Trustee.

" '4. It is understood by the undersigned that final authority and discretion in the matters referred to above are vested and must remain in the Directors and Trustee and that this instrument is executed merely to approve so far as the interests of the undersigned are concerned what they deem to be reasonable and proper action of the Directors and Trustee in the respects stated. It is further understood that due to changes in business conditions, enactment of new laws or other reasons, it may be deemed wise by the Directors and Trustee to make modification in the foregoing policy of compensation and dividends herein approved. It is therefore agreed that while the undersigned approved the foregoing policy as an appropriate exercise of the authority and discretion vested in the Directors and Trustee, for the year 1937 and for all years subsequent thereto, it is agreed that

the Directors and Trustees may make such modifications of said policy as may be necessary to conform to future conditions, including a modification of the percentage of additional bonus payable to W. F. Tynes and R. C. Stobert under the provisions of subsection (d) of Section 2 hereof. It is understood, however, that such percentage of additional bonus shall not exceed (5%) five percent each for the years 1937 and 1938, and that while the Trustee may thereafter agree to an increase of such percentage without further consultation with the undersigned, the receipt by the Trustee of this instrument shall not be construed in any way to commit the Trustee to any such increase.

" 'Very truly yours,
   Mildred Edmonson DeBardeleben
      Dec. 14, 1937
   Mary Pollard Tynes
      Dec. 20, 1937
   Lilla Tynes Sevier,   Dec. 20, 1937
   Hazel Tynes Stobert    "   "    "
   Margaret Tynes         "   "    "
   W. Fisher Tynes          "   "    "
   John H. Edmonson, Jr.   "   "    " ,

"The said document was entrusted to one or more of said directors for presentation to certain of such beneficiaries. At the time of such presentation the true state of the financial affairs of said Hardie Tynes Mfg. Company were unknown to complainants who were not then familiar with the actual net income of Hardie-Tynes Mfg. Company and were inexperienced in business and did not know or understand what was or what would be a reasonable sum to be paid to the said Tynes and the said Stobert for their services; but complainants relied upon the said Trustee for guidance in this respect and relied upon the trustee performing its duty to disclose the true facts in connection with the financial affairs of said Hardie-Tynes Mfg. Company and to advise complainants as to whether or not to sign said document. The said trustee failed to do so. The complainants allege that at the very time of the presentation of such document all of said facts were well known (a) to said bank both in its Commercial Department and in its Trust Department, (b) to said

Tynes, (c) to said Stobert, (d) to Forney Johnston, the attorney who drafted the trust instrument and who was at the time of the presentation of said document the attorney for said bank both in its Commercial Department and in its Trust Department, the attorney for Hardie-Tynes Mfg. Company, the attorney for and who prepared the incorporation papers of said Engine Company, the attorney for said Stobert the attorney for said Tynes and the attorney for Birmingham-Goslin Mfg. Company. Notwithstanding their knowledge of said facts and their familiarity with the true conditions, neither of the aforesaid individuals nor the trustee disclosed to these complainants at or before the presentation of said document the facts above referred to although such facts were then well known to each of them. Notwithstanding the fiduciary relations in the premises and notwithstanding the duty to make full and fair disclosures to complainants, neither of them observed such fiduciary relations and neither made full and fair disclosures to complainants and the complainants remained at the time some of them signed said document in ignorance of the financial condition and in ignorance of the net income of Hardie-Tynes Mfg. Company and also in ignorance of what would be or what was a reasonable sum to be paid to said Tynes and to said Stobert. The complainants who signed said document did so in ignorance of the true facts, being misled in the premises by the silence of those whose duty it was to make such disclosures. Some of the complainants thereafter repudiated their said signature and declined to be bound thereby as a result of such conduct on the part of the respondents or some of the respondents as herein averred.

"(27) Complainants aver that the statement in writing referred to in the preceding paragraph that 'In addition to a fixed salary, it is provided in Section 1 paragraph "e" of the above mentioned Indenture of Trust, that W. F. Tynes and R. C. Stobert shall receive, as additional compensation, after deduction for taxes and depreciation, five (5) per cent of the net profits of the company for any one year. It is further provided in this section that in the sound discretion of the Trustee that the above compensation may be increased'. was a misrepresentation of fact and untrue.

"The trust indenture reads: 'Except as herein provided, such management and control shall be complete and free from direction by the surviving Trustee (the Bank) as to contracts and all other operating policies and details, as to which the Trustee shall have no responsibility so long as, without consent or acquiescence of the trustee in writing:

\* \* \* \* \* \*

" '(e) The salary of either W. Fisher Tynes or R. C. Stobert is not increased to an amount per annum more than $7500.00 plus a total of 5% of the net earnings of said company, after provision for all taxes and depreciation deemed adequate by the Trustee. In considering the matter of consent to any larger compensation Trustee may, if deemed appropriate, advise with the available adult beneficiaries.'

\* \* \* \* \* \*

" 'Determination of what part of the net earnings of said company shall be distributed among the owners of the common or "equity" stock or ownership therein, shall remain in the Trustee, so long as it shall have the controlling ownership of said company.'

"(28) Complainants are advised by counsel, informed and believe and on such advice, information and belief aver that the arrangement the Bank as Trustee undertook to commit these complainants to by obtaining their signature to the writing set out in paragraph 26 of the bill as amended, providing for the payment of bonuses and 'incentive pay' is in violation of the trustee's duty to the beneficiaries of the trust, in that it was the duty of said Tynes and the said Stobert to faithfully perform their duties as officers and directors of the Hardie-Tynes Mfg. Company for reasonable compensation, and the payment of any sum to them as a bonus or as incentive compensation was without consideration and the amount so paid in equity belongs to the said Hardie-Tynes Mfg. Company, because of the fact that a

trustee or those occupying a trust relation towards the corporation or its stockholders cannot be paid additional and unreasonable amounts as an incentive to get them to perform their duty.

"(29) In December, 1941, the complainants, or some of them, undertook to acquire information with respect to the financial affairs of Hardie-Tynes Mfg. Company. Request was made of said Tynes and he wrote a letter to Mildred Edmonson DeBardeleben in words and figures as follows:

"December 15, 1941

"Dear Mildred:—

"Enclosed is a letter from the Trust Department to you which is a duplicate of a letter presented to each of the adult beneficiaries at a meeting held last Thursday night.

"You will note that the letter recites the fact that we gave figures and told about the financial position and earnings of the Company etc. This was done at the meeting 'by word of mouth' and every one seemed well pleased and agreed that the increase in salary was justified by the earnings record. They signified their approval by signing the letter, that is the copy thereof—on the line provided and giving it back to me to return to the Trust Department.

"It is strictly against a rule in the by-laws of the Company to publish a financial statement of the Company except to the bank, when making a loan and for that reason I would not be allowed to furnish this statement here. I will say, however, that the value of the Company has been increased approximately three times what it was in 1933. We feel very proud of this record. The next time you are here I will be glad to tell you more details.

"Incidentally today, we had a directors meeting and declared a dividend, which will result in a distribution to you by the Trust of $2,600.00. You will see that this is $1,000.00 more than you received the last two years. You should be receiving a check for this amount from the Trust Department within the next few days. Hope you can use it?????????

"If you approve of the action of the Trustee as outlined in the letter, please sign the tissue copy on the line provided and return to them in the enclosed addressed envelope.

"Best wishes for a Merry X'mas to all of you.

"Love

(signed) Uncle Fisher.

"Enclosed in the letter was a letter from the First National Bank addressed to Mrs. Mildred E. DeBardeleben, a copy of which was furnished to each of the complainants. Said letter reads as follows:

December 11, 1941

" 'Dear Mrs. DeBardeleben:

" 'We understand that Messrs. Stobert and Tynes have acquainted all available adult beneficiaries with the present and indicated status of Hardie-Tynes Mfg. Company corporate earnings, increase in surplus, and business on the books.

" 'It has been the practice of the company for some time to authorize base salaries and upon occasion to make adjustments towards the end of the year when earnings are more definitely known. Messrs. Stobert and Tynes have reminded us of the results which have been accomplished and of the business which is now committed, in support of their request for an increase in salary base, and we have reached the conclusion that for the year 1941 the salaries paid Messrs. Stobert and Tynes should be increased to an annual basis of $20,000.00 each, which is in addition to the bonus heretofore approved and concurred in by the adult beneficiaries.

" 'While this increase in base salary might properly be limited to 1941 and for subsequent years left for year end adjustments, there seems to be no particular reason why it should not be continued at that rate on a monthly basis, with the understanding on part of the Board that these salaries would be subject to reduction at any time on request by the Trustee to the Board in the event that change in conditions might indicate that such reduction is desirable.

" 'Meanwhile, as to the bonus, it should we think be understood that this is a matter

for year-end consideration by the Trustee, to a reasonable extent dependent upon results, and that, because of the greatly changed bearing of income taxes, the Trustee should not be held committed to the bonus or to the particular percentage heretofore approved by the adult beneficiaries or to the method of computing it, that is, whether before or after income taxes. We are approving the bonus application for 1941 calculated before deduction of income taxes on the assumption that this is the method heretofore employed and concurred in by the letter of December 20, 1937, signed by the adult beneficiaries.

" 'We are forwarding this to all adult beneficiaries with the suggestion that they advise us of any objection and if not, to let us have concurrence.

" 'Very truly yours,
(Sig.) C. F. Zukoski, Jr.
Vice President.'

"The complainants aver that the contents of the letter was the nature and extent of the information furnished them at said time. No earnings record was given and no information about the salaries of Stobert and Tynes was furnished the complainants until February, 1942. Previous to February, 1942, no figures relating to the compensation paid Stobert and Tynes by the Hardie-Tynes Mfg. Company were ever furnished the complainants with one exception. That exception was on the Thursday night referred to in the letter of December 15, 1941, from said Tynes to Mrs. Mildred DeBardeleben. The information given by word of mouth referred to in said letter was on a piece of paper not seen by the beneficiaries at the meeting, but a copy was later, early in 1942, obtained from said Tynes by one of the complainants through the Bank as Trustee. Said memorandum did not contain any information about the earnings of the Company or the compensation paid Stobert and Tynes, in the past or to be paid them in the future, nor any approximation thereof.

"(30) Shortly before filing the bill in this cause the complainants, through their attorney, requested of the Bank that it disclose to complainants the dates and amounts of loans made to W. Fisher Tynes and R. C. Stobert during the years 1941 to 1946, inclusive, and in reply to that request the Bank, on May 22, 1947, wrote counsel for the complainants as follows:

May 22, 1947
" 'Dear Judge Wilkinson:
" 'Re: Tynes Trust—T.D. 1550
" 'Our loan records with respect to individual customers are confidential records which we cannot disclose to other customers or their attorneys. I therefore am unable to comply with your request of May 21st relative to loans, if any, made by the bank to W. F. Tynes or R. C. Stobert.
" 'Very truly yours,
(Sig.) C. F. Zukoski, Jr.
Vice President.'

"And complainants aver that the relation between the Bank and said Stobert and said Tynes with respect to loans and other commercial transactions are peculiarly within the knowledge of the Bank and said Stobert and said Tynes."

The bill prays: "Premises Considered, complainants pray that The First National Bank of Birmingham, a corporation, Hardie-Tynes Mfg. Company, a corporation, Mrs. Mary Pollard Tynes, Mrs. Hazel Tynes Stobert, R. C. Stobert, Edith Whatley Tynes and The First National Bank of Birmingham as Executors of the estate of W. Fisher Tynes, deceased, each be made parties respondent to this bill by appropriate legal process; that they be required to plead, answer or demur thereto within the time prescribed by law, and that upon a final hearing the court will order, adjudge and decree, that .

"(1) R. C. Stobert has abused his trust and should be removed as a director of the Hardie-Tynes Mfg. Company.

"(2) The First National Bank of Birmingham, a corporation, has been guilty of grave breaches of trust as the surviving trustee of the William D. Tynes Trust, and mal-administration of the William D. Tynes Trust, and that it be removed as trustee of the said trust.

"(3) The sums paid W. Fisher Tynes and the sums paid R. C. Stobert as compensation by the Hardie-Tynes Mfg. Company for the year 1941 and each year fol-

lowing said year, separately and severally, were excessive, unreasonable and constituted a waste of the funds of the Hardie-Tynes Mfg. Company, and that each of them be required to restore to the treasury of said Company all sums received by them in excess of $24,000.00 per year during said time, and that a judgment or decree be rendered in favor of Hardie-Tynes Mfg. Company and against the estate of W. Fisher Tynes, R. C. Stobert and against The First National Bank of Birmingham, a corporation, for $500,000.00, with interest thereon, and that a lien be fixed on the respective holdings of W. Fisher Tynes and R. C. Stobert in said corporation to secure the payment of said amount, and that complainants be allowed a reasonable fee for their solicitor to be paid out of the sum so recovered by the said Hardie-Tynes Mfg. Company for recovering same for said corporation.

"(4) Hardie-Tynes Mfg. Company be required to pay to its stockholders a dividend in the sum of $500,000.00 out of the sum recovered for it.

"(5) Complainants are entitled to recover the sum of $500,000.00, with interest thereon, from Hardie-Tynes Mfg. Company and W. Fisher Tynes and R. C. Stobert and The First National Bank of Birmingham, and that a judgment be rendered against them for said sum in addition to the decree prayed for above, * * *."

The pertinent applicable provisions of the trust indenture are:

"1. One of the primary purposes Grantor has in mind in the creation of the within trust is to set apart for the benefit of his wife and children or grandchildren *a reserve fund to consist in large part of preferred and secured obligations. To* that end *Grantor hereby authorizes the Trustees, at any time during his lifetime, or The First National Bank of Birmingham, or successor, as surviving trustee, at any time after his death, to cause Hardie-Tynes Manufacturing Company or any other corporation, business or property in which the trust may hold an interest, to issue preferred stock, bonds or other securities or obligations of any kind or class deemed by Trustee as having a fixed liquidating value, and issue or deliver same to Trustee for other* stock, obligations or other securities of said Company or cash or other assets then held as an asset of said Trust.

"*It is Grantor's intent that such issuance and exchange shall take place when deemed practicable by Trustee and that the amount of such preferred or secured stock or obligations shall be sufficient to create in the hands of Trustee, taking into consideration other securities of the same kind or class at the time held in the trust, also cash and liquid assets, a total fund of preferred or secured stocks, investments or obligations having a conservative value of Six Hundred Thousand dollars, as may be determined conclusively by Trustee, and subject to revision or reconsideration by Trustee at any time before distribution of any excess estate as provided herein. For convenience said fund is sometimes referred to herein as the reserve fund.*

"*Grantor suggests that in the issuance of such preferred or secured stock or obligations of said Hardie-Tynes Manufacturing Company, they should be safe-guarded with restrictions or rights reserved to holder similar to those reserved to Trustee with reference to the active management or control of said company after Grantor's death, as hereinafter provided, or such other reservations as Trustee may deem appropriate.*" [Italics supplied.]

Further applicable provisions of the trust indenture are:

"Recognizing that the stock of Hardie-Tynes Manufacturing Company consists of stock in a closely held corporation subject to the hazards of business and dependent for success upon management which is trained and has special knowledge, Grantor directs that in the event of his death or incapacity or retirement from executive control or actual direction of its affairs, the immediate management and operating control of said Company shall by action or vote of Trustee and to the extent of its voting power to that end be vested in Grantor's son and son-in-law, W. Fisher Tynes and R. C. Stobert, or in the event of the death, incapacity, inability to work in harmony, inattention to the business, disqualification or retirement of either, to be

determined by Trustee, in the survivor or other of them.

"Except as herein provided, such management and control shall be complete and free from direction by the surviving Trustee as to contracts and all other operating policies and details, as to which the Trustee shall have no responsibility so long as, without consent or acquiescence of Trustee in writing:

"(a) There shall be no failure to pay currently dividends or interest of preferred or secured stock or obligations of the Company:

"(b) No lien prior to the interest of the trust in said company is placed or allowed upon any property of said company;

"(c) The ratio of current assets to current liabilities of said Company is two to one or better;

"(d) No liability other than a current liability is assumed by the Company; .

"(e) The salary of either W. Fisher Tynes or R. C. Stobert is not increased to an amount per annum more than $7,500.00, plus a total of 5% of the net earnings of said company, after provision for all taxes and depreciation deemed adequate by the Trustee. In considering the matter of consent to any larger compensation Trustee may, if deemed appropriate, advise with the available adult beneficiaries. . : ..

"(f) Average net earnings, for the latest fiscal years, after such taxes and depreciation, shall equal two or more times dividends or interest on preferred or secured stock or obligations of said Company; and,

"(g) Not more than fifty per cent (50%) of net earnings per year, after such depreciation and taxes, is invested in plant or equipment in any one year.

"Determination of what part of the net earnings of said company shall be distributed among the owners of the common or 'Equity' stock or ownership therein, shall remain in the trustee, so long as it shall have the controlling ownership of said company, and in the event said W. Fisher Tynes and R. C. Stobert shall, without the Trustee's consent, given in writing, violate or permit the failure of any of the restrictions hereinabove placed upon the management and control of said company, the Trustee shall thereupon have the right to take over such management and control for such period of time, down to the termination of the within trust, as it seems to the best interest of the beneficiaries hereunder. In order to make effective the control reserved to the Trustee under the conditions above stated, the Trustee shall have the right to require resignations, and may take them in advance, subject to filing by the Trustee. So long as said W. Fisher Tynes and R. C. Stobert shall jointly manage and control said company, it is Grantor's desire that they shall work harmoniously together, giving due weight to the opinions of each other. In the event of any disagreement between them, however, the decision of said W. Fisher Tynes shall govern. * * *

"(9) To vote in person or by proxy upon all stocks held by them, to unite with other owners of similar property in carrying out any plan for the reorganization of any corporation or company whose securities form a portion of the trust estate, to exchange the securities of any corporation for other securities upon such terms as they shall deem proper, to assent to the consolidation or merger of any such corporation, or lease or sale of the property or any portion thereof by such corporation to any other corporation, to pay all assessments, expenses and sums of money as they may deem expedient for the protection of the interest of the trust estate as the holders of such stocks, bonds or other securities, and generally to exercise in respect to all securities held by them the same rights and powers as are or may be exercised by persons owning similar property in their own right. * * *

"III. (a) The Trustees shall not be liable for any error in judgment in administering the trust, nor be liable for any acts of omission or commission, except wilful disregard of duty, and may act by agent or attorney and shall not be responsible for their acts of omission or negligence, but shall be held to the exercise of reasonable care in selecting, retaining and discharging them, and shall be entitled to credit for any and all expenditures deemed necessary

464

by them respectively in protecting or caring for the trust property. * * *

"(d) In the event that at any time during the lifetime of the Grantor the Trustees shall be unable to agree upon any act or course of action affecting said trust estate the decision of William D. Tynes as one of the Trustees shall govern the administration of the within trust and determine the action to be taken hereunder. From and after the death of the Grantor, The First National Bank of Birmingham or its successor, subject to the provisions hereafter stated, shall thereafter act as sole Trustee, with all of the rights, powers, duties and discretion herein vested in the joint Trustees.

"IV. The within trust shall continue until the expiration of twenty-one years after the death of the last to die of the Grantor, his wife, Mary P. Tynes, his son, W. Fisher Tynes, and his daughters, Lilla T. Sevier, Hazel T. Stobert, and Margaret Tynes, and his grandchildren, John Heron Edmonson, Mildred Edmonson and William Tynes Edmonson, provided that if and when, not earlier than fifteen years after the death of Grantor, his wife shall not be living, none of his grandchildren living at the time of Grantor's death shall be living and under the age of twenty-five years, said trust shall terminate.

"Upon the expiration of said period or happening of said condition, whichever shall be earlier, the trust shall terminate, and the Trustee shall thereupon transfer and pay over said trust estate to such of the descendants of the Grantor as may then be living, in equal shares per stirpes. The adopted daughter, Edith, of the Grantor's son, W. Fisher Tynes, shall be regarded as his child and as a grandchild of the Grantor for the purpose of such final distribution, provided that the aggregate share of the corpus of the reserve fund to which she and her descendants may be entitled under this section and/or under section XIV shall not in any event exceed in value the amount of Thirty-five Thousand dollars ($35,000.00), any distributable excess over that amount which would have gone to descendants of the body of W. Fisher Tynes

to be distributed to Grantor's other descendants per stirpes.

"The foregoing limitation shall not include or extend to any distribution of corpus not set up as or constituting a part of said reserve fund. In the event of distribution of any such corpus in excess of or not set up in the reserve fund the aggregate share of such excess distribution of corpus to said Edith and her descendants (not including any part of said reserve fund) shall not exceed the total amount so distributed divided by the number of my grandchildren (including said Edith) living at the time of my death, the intention of this limitation being that she and her descendants shall be entitled, subject to the conditions hereof, to the average amount which would be distributable out of such excess to my grandchildren living at the time of my death had they constituted the sole beneficiaries. * * *"

■■■ Said indenture is unique in its provisions, scope and purpose, partaking of the nature of the grantor's last will and testament. Respecting the law in the interpretation of wills, in Thurlow v. Berry, 249 Ala. 597 (604), 32 So.2d 526, 532, this court said:

"It has been authoritatively stated that the intent and purpose of the settlor of the trust is the law of the trust. Lovelace v. Marion Institute, et al., 215 Ala. 271, 272, 110 So. 381. And, again, ' "The fundamental and cardinal rule in the interpretation of wills is that the intention of the testator, if not inconsistent with some established rule of law or with public policy, must control, and it is the duty of the courts to ascertain such intention and to give force and effect to the scheme that he had in mind for the disposition of his estate." 30 Am. & Eng. Ency.Law, (2d Ed.) p. 661.' Castleberry v. Stringer, 176 Ala. 250, 57 So. 849, 850.

"We reaffirm these principles as the settled law in this jurisdiction."

The *"reserve"* provided for in paragraph 1 of the indenture of trust, which we have italicized, set up for the benefit and use of the grantor's wife, children and grandchil-

dren "per stirpes", is a thing apart from the discretionary powers conferred on the trustee and the other stockholders in respect to the conduct and operation of the business of the corporation.

The grantor recognized the fact that the continued existence and successful and skillful operation of Hardie-Tynes Manufacturing Company was necessary to the accomplishment of the purposes of the trust, that it is, so to speak, the "goose" that would lay "the golden egg." Hence he named in the indenture the personnel to take over if and when his dominating personality and skillful management and control should falter. Hence he made provision for their salaries and the incentive that would induce and attract such personnel to abandon other pursuits in other fields of business opportunities, investing them with broad powers and discretion in handling the intricate business and the promotion of its successful operation.

This is not a stockholder's bill. It is a bill by the beneficiaries of the Tynes Trust, consisting of the "reserve", seeking to enforce rights and recover money for and in behalf of the corporation (the Hardie-Tynes Manufacturing Company). The bill violates the rules of good pleading in that it does not "contain a clear and orderly statement of the facts on which the suit is founded, without prolixity or repetition," as required by Equity Rule 11, Title 7, Appendix, Code of 1940, p. 1050. It is redundant, in that it pleads facts in respect to a passed transaction between the parties,—the settling of a claim for refund, in part, of allowances from 1934 to and including 1942, which the bill shows has been settled and fully adjusted. It sets out matters of evidence in hæc verba in respect to said controversy and pleads conclusions not supported by the allegations of the bill.

On demurrer the allegations of a bill are construed most strongly against the pleader, and facts not alleged are deemed not to exist. Cullman Property Co. v. H. H. Hitt Lumber Co., 201 Ala. 150 (154), 77 So. 574; Berman v. Wreck-A-Pair Bldg. Co., 236 Ala. 301, 182 So. 54.

The gravamen or gist of the bill of complaint, as above stated, seeks to recover damages for alleged wrongs committed by the governing board of said corporation, who were selected by and acted with the approval or sanction of the stockholders in fixing the compensation and incentives—percentage bonuses—on the alleged conclusion that such payments were excessive and a waste of the assets of the corporation. The property and assets of a corporation, including choses in action, are owned by the corporation and the corporation in equity is owned by its stockholders. First Nat'l Bank of Gadsden v. Winchester, 119 Ala. 168, 24 So. 351, 72 Am.St.Rep. 904. Said alleged wrongs are matters of which the corporation itself or the stockholders, or some of them, may proceed to redress. Decatur Mineral & Land Co. v. Palm, 113 Ala. 531, 21 So. 315, 59 Am.St.Rep. 140; Holcomb v. Forsyth, 216 Ala. 486, 113 So. 516; Rogers v. Hill, 289 U.S. 582, 53 S.Ct. 731, 77 L.Ed. 1385.

The bill, as pointed out by some of the specific grounds of demurrer, does not allege that the payments to Stobert and Tynes were in excess of the amount authorized by the indenture creating the Tynes Trust. There is an absence of allegation that either Tynes, Stobert or the bank were guilty of fraud or wilful neglect of duty or that the trust consisting of the "Reserve" of which the bank is the surviving trustee, suffered any loss in consequence of such payments. Ingalls Steel Products Co. v. Foster & Creighton Co., 226 Ala. 112, 145 So. 464; 37 C.J.S., Fraud, § 80, p. 374; Terrell v. Marion County, 250 Ala. 235, 34 So.2d 160; Hays v. Alrichs, 115 Ala. 239, 22 So. 465. Furthermore there is an absence of allegation that there was a failure to pay dividends or interest on "preferred or secured stock obligations."

The power to contract and to supervise the internal affairs of a corporation is vested in its board of directors and in the absence of fraud, when there exists self-interest, the majority of the stockholders have power to ratify and approve the fixation of salaries and the allowances to

members of the board. As we construe the averments of the bill the election of Stobert and Tynes and the fixation of allowances to them was so ratified.—Decatur Mineral Land Co. v. Palm, 113 Ala. 531, 21 So. 315, 59 Am.St.Rep. 140. Moreover for aught that appears in the allegations of the bill, such trust reserve has been built up to its full capacity as required by the trust indenture. Hence no injury has resulted to the complainants as beneficiaries growing out of the conduct of the business of the corporation by its directors or stockholders.

We are of opinion that the bill is without equity and there is nothing appearing on its face showing that it can be amended so as to give it equity. The decree of the circuit court is due to be affirmed. So ordered.

Affirmed.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.